Affirmed as Modified and Memorandum Opinion filed September 27, 2007









Affirmed as
Modified and Memorandum
Opinion filed September 27, 2007.

 

 

In The

 

Fourteenth Court of
Appeals

____________

 

NO. 14-06-00833-CV

____________

 

END USERS, INC.,
Appellant/Cross-Appellee

 

V.

 

SYSTEM SUPPLY FOR END USERS, INC.,
Appellee/Cross-Appellant

 





 

On Appeal from the 157th
District Court

Harris County, Texas

Trial Court Cause No. 2004-65560

 





 

M E M O R A N D U M   O P I N I O N

Appellant/cross-appellee End Users, Inc. (AEU@) and
appellee/cross-appellant System Supply for End Users, Inc. (ASS@) both complain
that the trial court erred in refusing to disregard portions of the jury=s verdict in this
suit involving claims of breach of contract and unjust enrichment.  We
modify the judgment and affirm as modified.

                                               
I.  Background

 

Alan and Stephen Richardson are twin brothers.  In the
mid 1980s, Alan and Stephen formed SS.  SS=s business is to procure
natural gas from natural gas producers and provide that gas to end use
customers.  Stephen owned fifty-one percent of SS, Alan owned thirty-five
percent, and Stephen=s domestic partner William Lessovitz owned
fourteen percent.  In 1991, Alan became upset with how Stephen was running
SS and left the business.  Although the record is unclear whether Alan
sold his interest in SS or merely ceased participating in operating the
business, it is clear that Stephen and Alan thereafter considered SS to be Stephen=s business.

In 1994, Stephen and Alan decided to put their differences
behind them and form a second business, EU.  EU also provided natural gas
to end use customers, but it had a different customer base than SS.  Each
brother owned fifty percent of EU, and EU=s profits were to
be split equally between them.  Alan was the president and chief executive
officer while Stephen was the chairman and chief financial officer. 
Because EU was starting from scratch but SS had pre-existing relationships with
producers, the brothers decided that SS would initially support EU.  SS
and EU entered into a service agreement stating that SS would provide EU with Aall
administrative, legal, and ancillary services necessary to conduct normal
business commerce@ until EU=s capital account
reached certain levels.  At the heart of this litigation is the service
agreement provision that SS would provide EU with ACredit and Market
Risk for Commodity and Transportation Services at no cost@ to EU Auntil [EU]=s capital account
exceeds $200,000.@  In other words, as explained by
both Alan and Stephen, SS would use its credit relationships with producers to
procure natural gas for EU=s customers and would provide that gas to
EU at cost, thereby allowing EU to retain all profits from the ultimate sale of
the gas to EU=s customers, until EU earned $200,000 in profits.

 

As to EU=s business, the brothers agreed that Alan
was to focus more on developing a customer base while Stephen was to be in
charge of the financial aspects of the business.  As such, Stephen made
the payments from EU to SS to pay SS for the gas it had acquired for EU=s customers. 
In 2002, Alan grew interested in the finances when he became concerned that
personal problems between Stephen and Lessovitz might result in Lessovitz
attempting to gain some control of EU.  Alan claims that when he examined
the financial information, he discovered that Stephen had been continually
transferring large sums of money from EU to SS.  When Alan questioned
Naomi Rodriguez, who had started working for SS in 1987 and then later
transferred to EU, he discovered that EU was still obtaining gas for its
customers through SS instead of going directly to the producers.  Alan
testified that he believed this procedure had ended years ago in 1995 or 1996
when he stopped receiving copies of invoices for gas costs, which is when he
assumed EU had earned $200,000 in profits, thereby ending SS=s obligation to
procure gas for EU=s customers at cost under the service
agreement.  According to Alan, he had not examined the finances and
discovered this information during those preceding five or six years because he
was too busy running the company and had no reason to believe anything improper
was occurring.  Stephen testified that he never attempted to hide anything
from Alan but continued using SS to procure gas for EU=s customers
because EU was not financially strong enough to survive otherwise.

Despite the fact Alan, as fifty percent owner of EU,
directly benefitted from EU=s profits, Alan apparently believed
Stephen was using this gas purchasing/payment procedure as a mechanism to
improperly transfer excess funds to SS, which would benefit Stephen
alone.  Therefore, in October 2002, Alan demanded that the purchase/payment
relationship between SS and EU end and that both of them refrain from handling
any of EU=s money, which they would leave to Rodriguez. 
Both brothers began to study the financial data, which had not been well kept,
to determine who owed what to whom.  Their inability to reach an agreement
led to this lawsuit.

 

SS, through Stephen, sued EU.  Though it is undisputed
that EU, through Stephen, transferred to SS more money than was needed to pay
for the gas SS had procured for EU=s customers,
Stephen claimed that EU still owed SS money.  He asserted that he orally
assigned all of his share of the profits from EU to SS, which accounted for a
portion of the money he transferred from EU to SS.  Despite this
assignment, not all of his profits were actually transferred to SS. 
Stephen also claims that EU did not reimburse SS for the total cost of gas SS
procured for EU=s customers.  In other words, part of
the total money transferred from EU to SS was for a portion of the gas payments
owed and the other part was a portion of the profits Stephen assigned to SS,
with neither debt being paid in full.  Thus, SS sued EU for breach of the
service agreement for failing to pay SS the total cost of the gas and also for
failing to pay all of Stephen=s assigned EU profits to SS.  EU
counterclaimed for unjust enrichment.  Alan, on behalf of EU, argued that
EU had no obligation to pay Stephen=s profits to SS
and that SS had been unjustly enriched by the amount of money EU paid to SS in
excess of the total amount due for gas costs.

The jury found that EU had breached the service agreement
and found damages in the amount of $157,613.65, which is the amount SS=s expert had
calculated EU still owed for gas costs.  The jury found that Stephen was
entitled to half of EU=s profits and had assigned those profits
to SS but that EU had not failed to pay those profits to SS.  As to the
counterclaim, the jury found that SS did not receive unjust enrichment from EU.

Both sides requested that the trial court disregard certain
jury findings and enter judgment in their favor.  EU argued that the
evidence was insufficient to support the jury=s findings that it
breached the service agreement and thereby damaged SS in the amount of
$157,613.65.  EU did not challenge the jury=s findings that
Stephen had assigned his profits from EU to SS and that SS had not been
unjustly enriched by SS.  SS challenged the jury=s finding that EU
had not failed to pay SS his profits from EU that he assigned to SS.  The
trial court rejected these arguments and entered judgment based on the jury=s findings.

Both parties have appealed and reassert these same issues
on appeal.  They also assert issues regarding the propriety and amount of
attorney=s fees and
interest awarded.

                                                   
II.  Analysis

A.  Standard of Review

 

In determining whether legally sufficient evidence supports
the jury=s findings, we
consider the evidence in the light most favorable to the challenged finding and
indulge every reasonable inference that would support it.  City of Keller v. Wilson, 168 S.W.3d 802, 822 (Tex. 2005).  We must credit favorable
evidence if reasonable jurors could and disregard contrary evidence unless
reasonable jurors could not disregard it.  Id. at 827.  We
must determine whether the evidence at trial would enable reasonable and
fair-minded people to find the facts at issue.  Id.  Jurors
are the sole judge of the credibility of the witnesses and the weight to be
given to their testimony.  Id. at 819.  Evidence is conclusive
only if reasonable people could not differ in the conclusions.  Id. at 816.  When a party attacks the legal sufficiency of an adverse finding
when it had the burden of proof on the issue, it must demonstrate on appeal
that the evidence establishes, as a matter of law, all vital facts in support
of the issue.  Dow Chem. Co. v. Francis, 46 S.W.3d 237, 241 (Tex. 2001).

B. 
Breach of Contract

Question 1 in the jury charged asked if EU Afail[ed] to comply
with the Service Agreement dated October 14, 1994,@ and the jury
answered AYes.@  In question 2, the jury found that
failure damaged SS in the amount of $157,613.65.  In its first issue, EU
challenges the legal and factual sufficiency of the evidence to support the
jury=s answers to these
questions.

To preserve a factual sufficiency issue for review, the
appellant must include that issue in a motion for new trial.  Tex. R. Civ. P. 324(b)(2); Halim v.
Ramchandani, 203 S.W.3d 482, 487 (Tex. App.CHouston [14th Dist.] 2006, no pet.).  As EU concedes in
its reply brief, it failed to do so.  Thus, EU=s first issue is
overruled to the extent it challenges the factual sufficiency of the evidence.

 

As to legal sufficiency, EU claims no evidence supports the
jury=s answers to
questions 1 and 2 for two reasons.  First, EU claims it could not have
breached Athe Service Agreement dated October 14, 1994,@ as specifically
asked in the charge, because that agreement automatically terminated as a
matter of law when EU reached $200,000 in profits, which was sometime in 1996
or 1997.[1] 
Thus, argues EU, even if the parties= subsequent
conduct established a new contract, it could not have breached the original
service agreement because it was no longer in effect, meaning no evidence supports
the jury=s response. 
We conclude that EU waived this argument on appeal.  EU could have
preserved this argument in one of five ways:  (1) a motion for instructed
verdict, (3) a motion for judgment notwithstanding the verdict, (3) an
objection to the submission of the issue to the jury, (4) a motion to disregard
the jury=s answer to a
vital fact issue, or (5) a motion for new trial.  Cecil v. Smith,
804 S.W.2d 509, 510B11 (Tex. 1991); Halim, 203 S.W.3d
at 487; see also United Parcel Serv., Inc. v. Cengis Tasdemiroglu, 25
S.W.3d 914, 916 & n.4 (Tex. App.CHouston [14th
Dist.] 2000, pet. denied) (noting that a motion for judgment notwithstanding
the verdict preserves a complaint that a legal principle prevents a party from
prevailing on its claim).  EU=s motion to
disregard the jury=s response to question 1 did not include
this ground.  Although EU elicited testimony supporting this legal theory
and argued it during closing statement, EU never gave the trial court an
opportunity to rule on it.  EU  cannot now assert this theory for the
first time on appeal.  See Halim, 203 S.W.3d at 487 (finding
appellant waived a legal sufficiency argument not included in motion for
directed verdict); City of Houston v. Precast Structures, Inc., 60
S.W.3d 331, 335 (Tex.
App.CHouston [14th Dist.] 2001, pet.
denied) (finding legal sufficiency argument waived because appellant did not
raise that argument in motion for new trial).

 

 

EU=s second legal sufficiency argument
focuses on the evidence presented rather than  a legal theory, as with its
first issue.  EU emphasizes the undisputed fact that the total value of
the money transferred from EU to SS exceeded the amount necessary to reimburse
SS for gas costs and disputes SS=s theory that the
money flow was allocated partially to gas costs and partially to Stephen=s share of EU=s profits that he
assigned to SS.  These issues were hotly disputed, and the jury had
substantial evidence upon which to base its rejection of EU=s theory of the
case.  For example, EU argues that Stephen=s claim that he
assigned his share of EU=s profits to SS was not credible because
he did not assert it until his second amended petition.  The jury
specifically resolved this credibility issue in Stephen=s favor in its
response to question 4, which EU did not challenge on appeal, and it is the
jury=s province to make
such credibility determinations and resolve conflicts in the evidence.  See
City of Keller, 168 S.W.3d at 819; see also Wilson v. Tex. Parks & Wildlife Dep=t, 853 S.W.2d 825, 832 (Tex. App.CAustin 1993) (unchallenged jury
findings binding on appeal), rev=d on other grounds, 886 S.W.2d 259 (Tex. 1994).  Not only
did Stephen testify that he made these assignments orally during each of EU=s annual meetings,
Rodriguez and Calvin Suddeath (another long-term employee), both of whom were
present during these meetings, corroborated Stephen=s testimony. 
EU also argues that SS=s damages evidence was unreliable because
it was based in part on data created after the lawsuit was filed.  Again,
the jury resolved this credibility issue in SS=s favor. 
Stephen Parkhill, SS=s economic expert, testified that neither
company=s financial data
was well kept and that a majority of the financial accounting had to be
generated based on information available from SS and other outside sources,
such as tax returns.  Parkhill explained that he spent over 150 hours
reconstructing this financial data and preparing his damages opinions and that
he believed his reconstructed data was materially accurate and a reliable basis
for his opinions.  The jury awarded, down to the penny, the breach of
contract damages Parkhill calculated, and the jury was entitled to rely on his
testimony.  Finally, EU argues that Stephen controlled the flow of money
from EU to SS and thus could have transferred any money he believed was due for
gas costs at any time.  Thus, according to EU, it had no control over the
transfers and cannot be liable for any deficiency.  When Stephen made
these transfers, he did so on EU=s behalf, and when
Alan learned in 2002 that Stephen had been doing so, he demanded that both he
and Stephen cease all transfers.  Stephen agreed to Alan=s request,
effectively freezing the status quo.  Moreover, after Parkhill made his
damages calculations, SS sent EU a demand letter for $157,613.65 for gas costs,
which EU refused to pay.  Based on this evidence, the jury could have
reasonably concluded that EU failed to pay SS $157,613.65 due for gas costs.

Because we conclude the evidence is legally sufficient to
support the jury=s answers to questions 1 and 2, we
overrule EU=s first issue.

C. 
Assignment of Profits

The jury answered ANo@ to question 5,
which asked, ADid [EU] fail to pay one half of its annual profits to
[SS]?@  In its
third cross-issue, SS claims that no evidence supports this finding and that
the contrary was established as a matter of law, based on the evidence and the
jury=s other findings.[2]  SS argues that
because (a) the total amount of money transferred between EU and SS was
undisputed and was greater than was needed to pay all the gas costs, (b) the
jury, by finding a breach of contract and awarding damages, rejected EU=s theory that the
transferred money was not all for gas costs, (c) the jury found that the
remaining portion of money transferred to SS did not constitute unjust
enrichment (and this finding has not been appealed), (d) the jury found that
Stephen assigned his EU profits to SS (which is also unappealed), and (e) the
total amount of Stephen=s share of EU=s profits was
undisputed, the jury must necessarily find that EU failed to transfer the
remaining amount of Stephen=s profits to SS.  In short, SS argues
that the jury=s answers to the other questions mandate a finding
that EU owed SS Stephen=s remaining profits, and thus no evidence
supports the jury=s contrary finding.

 

Though SS has framed its argument as a no evidence issue,
its argument is based on the premise that the jury=s answers are
inconsistent.  See Dori v. Bondex Int=l, Inc., No.
11-04-00179-CV, 2006 WL 1554614, at *4 (Tex. App.CEastland June 8,
2006, no pet.) (mem. op.).  Texas Rule of Civil Procedure 295 provides a
procedure for resolving conflicting jury answers, but it must be invoked before
the jury is discharged or any error based on conflicting jury answers is
waived.  See id.; Coastal Chem Inc. v. Brown, 35 S.W.3d 90,
99 (Tex. App.CHouston [14th Dist.] 2000, pet. denied).  SS did
not raise this conflict before the jury was dismissed, and therefore its issue
is waived.  See Dori, 2006 WL 1554614, at *4B5 (finding
appellant=s argument that Athe jury=s liability
finding required a damage award@ to be Aanother way of
saying the jury=s verdict contained conflicting answers@ and concluding
appellant waived issue on appeal by failing to bring conflict challenge before
jury dismissed); see also Spring Windows Fashions Div., Inc. v. Blind Maker,
Inc., 184 S.W.3d 840, 867 (Tex. App.CAustin 2006, pet.
granted, judgm=t vacated w.r.m.) (refusing to conduct limited
sufficiency review based on reconciliation of conflicting jury answers when
appellant waived conflict argument, noting A[t]o hold
otherwise would create an end-run around the modern error preservation
requirement that parties object to conflicting jury findings before the jury is
discharged and the sound policies that underlie that requirement@).  Thus, we
overrule SS=s third cross-issue.

D. 
Attorney=s Fees

 

SS presented expert testimony that it reasonably and necessarily
incurred $75,000 in attorney=s fees for preparation and trial and that
a reasonable fee for appeal to the court of appeals and the Texas Supreme Court
would be $30,000 and $25,000 respectively.  In question 8, the jury found
$75,000 was reasonable and necessary for attorney=s fees for
preparation and trial but failed to find any amount for reasonable appellate
attorney=s fees.  The
trial court entered judgment for that exact amount of attorney=s fees.  In
its second issue, EU argues that the trial court erred in awarding SS any
attorney=s fees.  We
review a trial court=s award of attorney=s fees for an
abuse of discretion.  Broesche v. Jacobson, 218 S.W.3d 267, 277 (Tex. App.CHouston [14th
Dist.] 2007, no pet. h.).  Section 38.001 of the Civil Practice and
Remedies Code provides that A[a] person may recover reasonable attorney=s fees@ on a claim for
breach of contract.  Tex. Civ.
Prac. & Rem. Code Ann. ' 38.001(8) (Vernon
1997).  EU argues that SS was not entitled to attorney=s fees because the
evidence was legally insufficient to support the jury=s finding that EU
breached the service agreement.  We have already rejected this argument
and concluded that the evidence is legally sufficient.  

EU also argues that the trial court=s attorney=s fee award was
improper because SS failed to segregate the attorney=s fees expended
pursuing its breach of contract claim, for which attorney=s fees are
recoverable, from those expended in proving EU owed SS money for Stephen=s unpaid
distributions that he assigned to SS, for which attorney=s fees are not
recoverable.  This argument is without merit.  The Texas Supreme
Court recently reaffirmed the principle that Aif any attorney=s fees relate
solely to a claim for which fees are unrecoverable, a claimant must segregate
recoverable from unrecoverable fees.@  Tony
Gullo Motors I, L.P. v. Chapa, 212 S.W.3d 299, 313 (Tex. 2006). 
However, Awhen discrete legal services advance both a
recoverable and unrecoverable claim[,] . . . they are so intertwined that
they  need not be segregated.@  Id.
at 313B14.  In this
case, to prove that EU still owed SS money under the service agreement for gas
costs, even though EU had transferred more money to SS than was needed to pay
all the gas costs, SS had to prove that some of the funds transferred from EU
to SS were to pay a portion of Stephen=s assigned
profits.  In other words, SS could not prevail on its breach of contract
claim without proving the existence and amount of the assignment.  See
Broesche, 218 S.W.3d at 277B78.  Thus, because SS=s attorney=s fees expended to
prove the assignment issue Awere necessary to recover on their
contract, they are recoverable.@  Varner v. Cardenas, 218
S.W.3d 68, 69 (Tex. 2007).  Accordingly, we overrule EU=s second issue.

 

In its first and second cross-issues, SS argues that the
trial court erred in failing to award it any appellate attorney=s fees.  We
agree.  An award of attorney=s fees under
section 38.001 is mandatory.  See Lee v. Perez, 120 S.W.3d 463, 469
(Tex. App.CHouston [14th Dist.] 2003, no pet.).  SS
presented uncontested testimony that $30,000 is a reasonable fee for an appeal
to this court and $25,000 for an appeal to the Texas Supreme Court.  AWhile the trial
court had discretion to award a smaller or larger fee, it did not have
discretion to award nothing.@  Id.  We therefore
sustain SS=s first and second cross-issues and modify the
judgment in accordance with the uncontested evidence.  See id. at
469B70.

E. 
Interest

The trial court assessed prejudgment interest on the
damages it awarded SS for EU=s breach of the service agreement. 
In its third issue, EU argues that SS is not entitled to interest because the
evidence was insufficient to support the jury=s finding that EU
owed SS any money for gas costs.  We have already determined that the
evidence is legally sufficient to support this finding, and thus we overrule
this issue.

                                                
III.  Conclusion

We conclude that the evidence is
sufficient to support the jury=s finding that EU breached its contract with SS, causing $157,613.65 in
damages.  SS has waived any argument that the jury erred in failing to
find that EU failed to pay additional profits Stephen assigned to SS.  We
also conclude that SS has shown it is entitled to the interest and $75,000 in
attorney=s fees awarded by the trial
court.  However, the trial court failed to award SS reasonable attorney=s fees for a successful appeal to
this court and the Texas Supreme Court.  Thus, we modify the judgment in
accordance with the uncontested evidence to add $30,000 for the services of SS=s attorneys in this successful
appeal and $25,000 in the event EU makes an unsuccessful appeal to the Texas
Supreme Court, and we affirm the judgment as modified.

 

 

 

/s/     
Leslie B. Yates

Justice

 

Judgment rendered
and Memorandum Opinion filed September 27, 2007.

Panel consists of
Justices Yates, Seymore, and Edelman.*

 

*  Senior
Justice Richard H. Edelman, sitting by assignment.














[1]  Though it does not label it as such, EU appears
to argue that the language of the service agreement stating that SS would
procure gas for EU=s customers at cost Auntil@ EU attained $200,000 in profits constituted a
condition subsequent, the happening of which would automatically terminate the
contract.  See Black=s
Law Dictionary 312 (8th ed. 2004)
(defining Acondition subsequent@ as A[a] condition that, if it occurs, will bring something
else to an end; an event the existence of which, by agreement of the parties,
discharges a duty of performance that has arisen@).





[2]  In its fourth cross-issue, SS argues the
evidence is also factually insufficient for the same reason.  However, it
failed to raise this issue in a motion for new trial, and thus it is
waived.  See
Tex. R. Civ. P. 324(b)(2); Halim,
203 S.W.3d at 487.