Rebecca L. BROESCHE, Appellant

v.

John Daniel JACOBSON and Texas Independent Exploration, Inc., Appellees.

No. 14–04–00548–CV.

Court of Appeals of Texas, Houston (14th Dist.).

March 8, 2007.

Shawn Russel Casey, Houston, for appellant.

Mark Trachtenberg, J. Greg McEldowney, Mario de la Garza, Katharine D.

David, Houston, for appellee Texas Independent Exploration, Inc.

Stewart W. Gagnon, Miryam R. Mitchell, Houston, for appellee John Daniel Jacobson.

Panel consists of Justices YATES, ANDERSON, and HUDSON.

## OPINION

LESLIE B. YATES, Justice.

This appeal arises out of a dispute between appellant Rebecca L. Broesche and appellee John Daniel Jacobson over the interpretation of their 1993 divorce decree. In ten issues, Broesche claims the trial court erred in (a) its interpretation of the decree, (b) awarding attorneys' fees and sanctions against her, and (c) entering a turnover judgment awarding funds interpleaded by appellant Texas Independent Exploration, Inc. ("TIE") to Jacobson. We affirm in part and reverse and remand in part.

## I. BACKGROUND

Broesche and Jacobson divorced in 1993 with an agreed decree. Post-divorce litigation began in 1996. We discuss only the details of these protracted and complicated legal proceedings as are necessary to the disposition of this appeal.

Jacobson is a geologist employed by TIE, and TIE compensates Jacobson largely by giving him interests in the oil and gas wells he helps develop. When Broesche, who is also a geologist, and Jacobson divorced, the decree provided that Broesche was to receive "[o]ne-half of all oil and gas interests of the parties as described in Exhibit A," which is a list of fifty oil and gas wells. The central issue in this litigation is the parties' differing interpretations of exactly what oil and gas interest Broesche received in the decree.

Jacobson contends her interest is only in the specific wells listed whereas Broesche claims she has an interest in the leaseholds associated with each well. The trial court eventually agreed with Jacobson and ruled as a matter of law that the agreed decree unambiguously awarded an interest only in the wells listed in Exhibit A, not in the associated leaseholds or any subsequent wells drilled pursuant to those leaseholds.

The decree also provided that Broesche was responsible for paying one-half of federal income taxes due during certain years of the marriage. When Broesche failed to pay these taxes, Jacobson brought an action in 1996 to enforce the decree. In 1997, the trial court entered judgment for Jacobson in the amount of $24,421 plus interest. Jacobson then filed a writ of garnishment against TIE, who, as operator of the wells, was responsible for paying Broesche revenue for her oil and gas interests under the decree. The trial court eventually dismissed the writ of garnishment and granted a new trial on the tax issue on the condition, to which Broesche agreed, that TIE continue to hold in suspense the money generated from Broesche's oil and gas interests. The trial court later held a new trial on the tax issue and other issues and entered a judgment in June 2000. Thereafter, in September 2000, the trial court granted another motion for new trial on the other issues but not the tax issue, rendering the tax judgment interlocutory.

Meanwhile, TIE became further involved in the litigation in 1998 when Broesche asserted claims against TIE regarding TIE's handling of her oil and gas interests, including breach of contract, fraud, and conversion. TIE moved for summary judgment on all claims. The trial court granted summary judgment for TIE and severed this judgment in 1999, and Broesche did not appeal. TIE contin-

ued to hold revenues from Broesche's oil and gas interests in suspense because the trial court had not yet held the second trial on the remaining issues. However, both parties began demanding that TIE release the funds to them. Because of these conflicting demands, in 2002, TIE filed an interpleader action and deposited the suspensed funds in the court's registry. After TIE filed its interpleader, Broesche refiled her previously adjudicated claims against TIE as counterclaims to the interpleader. TIE moved for summary judgment on these claims, and Broesche moved for partial summary judgment as to the conversion claim. In 2003, the trial court granted TIE's motion and denied Broesche's motion.

In January 2004, the remaining issues came to trial again. In a pretrial hearing, the trial court made its ruling regarding the interpretation of the decree, rejecting Broesche's arguments regarding the nature of her oil and gas interests as a matter of law. This ruling effectively resolved all remaining claims except Jacobson's and TIE's claims for attorneys' fees and sanctions against Broesche. The trial court had granted TIE's motion for sanctions on June 17, 2003 and awarded $17,500 to TIE but carried Jacobson's motion for sanctions. On February 24, 2004, the trial court signed an order granting Jacobson's motion for sanctions, awarding $162,000. The same day, the trial court entered a final judgment that, among other things, reconfirmed Jacobson's prior tax judgment and awarded TIE $119,598.74 in attorneys' fees for its interpleader action. Now that the tax judgment was final, Jacobson filed a motion to have the interpleaded funds turned over to him to satisfy the judgment, which the trial court granted on February 27, 2004. Because the amount of tax money owed had more than doubled with interest, Jacobson received

most of the $55,925.39 in proceeds in the court's registry.

In ten issues, Broesche appeals the final judgment, the turnover order, and both sanctions orders.

## II. ANALYSIS

### A. Interpretation of the Decree

In her first issue, Broesche claims the trial court erred in its interpretation of the divorce decree. An agreed divorce decree is a contract subject to the usual rules of contract interpretation. *See McGoodwin v. McGoodwin*, 671 S.W.2d 880, 882 (Tex.1984). Our primary concern in interpreting a contract is ascertaining the true intent of the parties. *Heritage Res., Inc. v. NationsBank*, 939 S.W.2d 118, 121 (Tex.1996); *Zurich Am. Ins. Co. v. Hunt Petroleum (AEC), Inc.*, 157 S.W.3d 462, 465 (Tex.App.-Houston [14th Dist.] 2004, no pet.). We examine the writing as a whole in an effort to harmonize and give effect to all the provisions of the contract so that none will be rendered meaningless. *Coker v. Coker*, 650 S.W.2d 391, 393 (Tex. 1983); *Zurich*, 157 S.W.3d at 465. If the contract can be given a certain or definite legal meaning or interpretation, then it is not ambiguous, and the court will construe it as a matter of law. *Coker*, 650 S.W.2d at 393; *Cook Composites, Inc. v. Westlake Styrene Corp.*, 15 S.W.3d 124, 131 (Tex. App.-Houston [14th Dist.] 2000, pet. dism'd). If, however, a contract is capable of more than one reasonable interpretation, it is ambiguous. *Am. Mfrs. Mut. Ins. Co. v. Schaefer*, 124 S.W.3d 154, 157 (Tex. 2003); *Zurich*, 157 S.W.3d at 465. This court may conclude a contract is ambiguous, even though the parties do not so contend. *Zurich*, 157 S.W.3d at 465. When a contract is ambiguous, construing it as a matter of law is improper because the interpretation of the contract becomes a

fact issue. *See Coker*, 650 S.W.2d at 394; *Zurich*, 157 S.W.3d at 465.

The agreed decree here divides the marital estate, with parallel provisions awarding each party similar assets. Regarding oil and gas interests, the decree awards each party "[o]ne-half of all oil and gas interests of the parties as described in Exhibit A." Exhibit A is a chart with fifty rows and five columns. The five columns are labeled "County," "Well," "WI%," "NRI%," and "Status." "WI%" means working interest percentage, and "NRI%" means net revenue interest percentage. "Status" types are "A" for active, "I" for inactive, and "APO" for after payout.[1]

The decree further provides that Broesche's interests "shall be transferred in the form of assignments to be prepared by [TIE] subsequent to the divorce of the parties. It is further ORDERED that [Jacobson] take all actions necessary to insure that one-half of the active interests on Exhibit A are adequately and appropriately transferred to [Broesche]." A separate section of the decree, entitled "Division of Assets and Liabilities Not Provided for in Decree," states in part as follows:

It is further Ordered that all oil and gas interests, or other contractual or business interests which may have accrued during the course of the marriage but which are not specifically listed herein,

are awarded to the party whose personal efforts or signature created such interests, if any.

Broesche argues that the decree unambiguously awards her an interest not only in the fifty specific wells listed in Exhibit A but in the leaseholds enabling those wells to be built. She contends that the term "working interest" means leasehold interest. Thus, she reasons, Exhibit A's reference to "WI%" means it is describing a leasehold interest. Broesche further argues that the decree shows an intent to divide the marital estate evenly and that awarding all leasehold interests to Jacobson would be inconsistent with this intent.[2] Jacobson contends the decree unambiguously awards Broesche an interest only in the specific wells listed in Exhibit A. He disputes that a working interest necessarily means a leasehold interest and points out that neither Exhibit A nor any other decree provision mentions any mineral lease. Jacobson also relies upon the language in the decree stating that any oil and gas interests not specifically listed in the decree are awarded to the person whose efforts created the interests, which in this case would be Jacobson.

■ Broesche is correct that a working interest is generally understood to mean a mineral interest created by a leasehold.[3]

---

1. So, for example, the first row, corresponding to each of the five columns, reads:

 Calhoun, Frerich # 1, 0.333333, 0.249998, A

2. The parties seemingly agree that a leasehold interest is more valuable than an interest in the well, but they do not explain or quantify the value of any leasehold interests.

3. A prominent oil and gas law treatise defines a working interest as "[t]he operating interest under an oil and gas lease" and notes that working interest is a synonym for leasehold interest. 8 HOWARD R. WILLIAMS & CHARLES J. MEYERS, OIL AND GAS LAW,

MANUAL OF TERMS, 562, 1191 (2005); *see also Geodyne Energy Income Prod. P'ship I–E v. Newton Corp.*, 161 S.W.3d 482, 486 n. 10 (Tex.2005) (citing treatise). Courts in Texas and around the country have relied on this treatise when analyzing the meaning of a working interest in particular cases. *See H.G. Sledge, Inc. v. Prospective Inv. & Trading Co.*, 36 S.W.3d 597, 599 nn. 2–3 (Tex.App.-Austin 2000, pet. denied); *Karnes v. Salem Nat'l Bank (In re Fullop)*, 125 B.R. 536, 544 (Bankr.S.D.Ill.1990); *Miller v. Schwartz*, 354 N.W.2d 685, 689 (N.D.1984); *see also Gore Oil Co. v. Roosth*, 158 S.W.3d 596, 597 n. 1 (Tex.App.-Eastland 2005, no pet.) (noting that

However, as the Oklahoma Supreme Court has noted, oil and gas terms such as working interest are often used "loose[ly] and inaccurate[ly]." *Colonial Royalties Co. v. Keener,* 266 P.2d 467, 471 (Okla.1953). Though the technical definition of working interest may be synonymous with a leasehold interest, working interest is often used merely to denote an interest in mineral rights. *Id.; see also Smith v. Graham,* 705 S.W.2d 705, 707 (Tex.App.-Texarkana 1985, writ ref'd n.r.e.) (noting that the use of "working interest" in a deed could be consistent with assigning a working interest created by leases or simply a method to calculate the percentage of the mineral interest granted); *Schnitt v. McKellar,* 244 Ark. 377, 427 S.W.2d 202, 208 n. 2 (1968) (noting that "[t]reatment of the words 'working interest' as meaning something other than their purely technical definition is not novel" and that "it is often used to denote merely an interest in the mineral rights").

■ We cannot determine in this case whether the parties used the term working interest in its technical sense to refer to a leasehold interest or more loosely to mean mineral interests. Both Broesche and Jacobson are geologists, and they may well have used the term in its technical sense. Moreover, interpreting the decree as dividing any leasehold interests Jacobson might have had would be consistent with the decree's structure of parallel division of

other marital property. However, neither the body of the decree nor Exhibit A make any reference to any oil and gas leases. Indeed, we cannot discern from the four corners of the decree whether Jacobson had *any* leasehold interests that could have been divided by the decree, much less a leasehold interest in every well listed in Exhibit A. *See Extraction Res., Inc. v. Freeman,* 555 S.W.2d 156, 159 (Tex.Civ. App.-El Paso 1977, writ ref'd n.r.e.) ("It is elementary that one cannot convey what he does not own."). Further, the later decree provision disposing of oil and gas interests not specifically listed in the decree seems to contemplate that such interests exist, and interpreting working interests as leasehold interests and therefore included in Exhibit A would seem to render this provision meaningless. *See Schaefer,* 124 S.W.3d at 159 (contracts should be interpreted to avoid rendering a provision meaningless). We conclude both of these interpretations of the decree are reasonable, and thus we find the decree is ambiguous as to the exact nature of the oil and gas interests awarded to Broesche in the decree. *See Zurich,* 157 S.W.3d at 467 (conflicting yet reasonable interpretations renders a contract ambiguous). Therefore, we conclude the trial court erred in finding that the decree unambiguously awarded Broesche an interest only in the wells and not in any leaseholds. We sustain Broesche's first issue.[4]

---

leasehold interest owners are "commonly referred to in the industry as working interest owners"); *Steger v. Muenster Drilling Co.,* 134 S.W.3d 359, 367 n. 7 (Tex.App.-Fort Worth 2003, pet. denied) (citing *Black's Law Dictionary* in defining working interest as "the right to the mineral interest granted by an oil and gas lease").

4. In her second issue, Broesche argues that Jacobson's failure to specifically deny the allegation in her live pleading that she "has met all conditions precedent entitling her to title

to the mineral interests in question" means that Broesche is entitled to judgment for the leasehold interests as a matter of law. We disagree. Although proof of performance of any conditions precedent is an essential element of a plaintiff's case, such proof does not relieve the plaintiff of the burden of proving the other elements of the claim. *See Grimm v. Grimm,* 864 S.W.2d 160, 161–62 (Tex.App.-Houston [14th Dist.] 1993, no writ). Thus, even if Jacobson failed to specifically deny that Broesche met all conditions precedent, she is not thereby entitled to judgment as a

## B. Conversion Claims

In 2002, Broesche began demanding that TIE release to her the oil and gas revenues that TIE had been holding in suspense since Jacobson filed the writ of garnishment, which was later dismissed, in 1998. Broesche eventually filed conversion claims against both Jacobson and TIE (in the form of counterclaims to TIE's interpleader) on the theory that TIE's continued suspense of these funds was illegal because the garnishment action was dismissed and the court's order to continue holding the funds applied only to money TIE had already held, not to future revenues. Broesche moved for partial summary judgment on her conversion claims against Jacobson and TIE on this illegal garnishment theory, and TIE filed its own motion for summary judgment. The trial court granted TIE's motion and denied Broesche's. In issues three through six, Broesche reasserts this illegal garnishment theory and claims the trial court erred in denying her partial summary judgment motion and granting TIE's motion.

■■■■■ We need not address the merits of Broesche's issues because they are not properly before us. An order denying summary judgment is generally not appealable because it is not a final judgment. *Cinn. Life Ins. Co. v. Cates,* 927 S.W.2d 623, 625 (Tex.1996). As to Jacobson, in the same pretrial hearing in which the trial court construed the decree against her, Broesche withdrew her conversion claim against Jacobson, a fact the trial court noted in the findings of fact and conclusions of law in support of its final judgment. Thus, the trial court never entered a final judgment on Broesche's conversion claim against Jacobson. As to TIE, the trial court not only denied Broesche's summary judgment motion but granted TIE's motion. When parties file cross-motions for summary judgment and the court grants one but denies the other, the losing party cannot appeal the denial of its motion without also appealing the granting of the other party's motion. *See CU Lloyd's of Tex. v. Feldman,* 977 S.W.2d 568, 569 (Tex.1998) (noting that denial of summary judgment was appealable because appellant appealed ruling granting other party's motion); *Bullacher v. First Republic Bank,* No. C14–89–00015–CV, 1990 WL 4230, at *1 (Tex.App.-Houston [14th Dist.] Jan. 18, 1990, writ denied) (not designated for publication) (refusing to consider arguments regarding denial of appellants' summary judgment motion because appellants did not challenge trial court's grant of appellees' summary judgment motion). Broesche's brief never mentions, much less rebuts, the specific grounds for summary judgment on her conversion claim against TIE offered in TIE's motion. *See Ketter v. ESC Med. Sys., Inc.,* 169 S.W.3d 791, 797 (Tex.App.-Dallas 2005, no pet.) ("When the appeal does not challenge one of the grounds for summary judgment, the judgment may be affirmed on that ground alone."). For these reasons, we overrule Broesche's third, fourth, fifth, and sixth issues.

## C. Sanctions

In January 2003, Jacobson moved for sanctions against Broesche, asserting multiple grounds, including filing numerous groundless pleadings in bad faith or for improper purposes, abusing the discovery process, and engaging in conduct intended to disrupt the proceedings. He requested sanctions pursuant to Rules 13 and 215 of the Texas Rules of Civil Procedure, section 10.001 of the Texas Civil Practice and Remedies Code, and the court's inherent

matter of law on her contract claim. We overrule Broesche's second issue.

power to sanction for improper conduct. TIE joined in Jacobson's motion. After a hearing in April 2003, the court carried Jacobson's motion but granted TIE's motion and ordered Broesche to pay TIE $17,500 in sanctions. The trial court issued this order on June 17, 2003. After the pretrial hearing in which the court construed the divorce decree against Broesche, the trial court held another sanctions hearing and, in an order dated February 24, 2004, granted Jacobson's motion for sanctions and ordered Broesche to pay Jacobson $162,000.

In her seventh and eighth issues, Broesche alleges the trial court abused its discretion in imposing sanctions. She neither disputes the trial court's method of calculating the amount of sanctions, which was based on unnecessary attorneys' fees expended in response to the sanctionable conduct, nor claims the overall amount of sanctions imposed is unreasonable. Rather, she argues the evidence is insufficient to support the trial court's sanctions findings and/or that the conduct at issue was not sanctionable. We review a trial court's decision to award sanctions for an abuse of discretion. *Clark v. Bres*, 217 S.W.3d 501, 512 (Tex.App.-Houston [14th Dist.] no pet. h.).

The trial court found at least twenty-six bases to sanction Broesche based on Broesche's conduct and the conduct of her counsel.[5] These include filing various frivolous motions and pleadings, abuse of the discovery process regarding Broesche's expert designation and behavior in scheduling and testifying at her deposition, and engaging in conduct intended to disrupt the proceedings by abusing the rules of fair play and causing delay. After reviewing the record and briefs, we conclude the trial court did not abuse its discretion in imposing sanctions. We will not discuss each incident in detail but will instead focus on the incidents most prominent in the sanctions hearings, briefs, and oral argument.

After previously filing claims against TIE that were adjudicated on summary judgment, severed, and not appealed, Broesche re-filed the same claims against TIE years later as counterclaims to its interpleader. TIE was then forced to re-defend against these claims in the course of increasingly contentious and protracted litigation. The trial court found that these re-filed claims were frivolous and filed for the purposes of delay and harassment in violation of Rule 13. Broesche merely asserts without explanation that her counterclaims were based on a good faith dispute. The trial court disagreed, and Broesche has not established that the trial court abused its discretion in finding that re-filing claims that had been adjudicated, severed, and not appealed was in bad faith and for harassment.

The trial court found Broesche abused the discovery process in conduct relating to her deposition in December 2002. Broesche's deposition was scheduled for December 6, a date she chose, but

---

5. These findings are listed in the February 24, 2004 order on Jacobson's motion for sanctions and in the findings of fact and conclusions of law supporting the final judgment. The June 17, 2003 order granting TIE's motion for sanctions does not specify with particularity the reasons for the sanctions order. Broesche argues this invalidates the sanctions order. *See Spiller v. Spiller*, 21 S.W.3d 451, 456 (Tex.App.-San Antonio 2000, no pet.) (noting some sanctions provisions that require the trial court to make specific supporting findings). However, Broesche did not call this failure to the trial court's attention, and therefore she did not preserve this complaint for our review. *See id.; Alexander v. Alexander*, 956 S.W.2d 712, 714 (Tex.App.-Houston [14th Dist.] 1997, pet. denied).

she failed to appear, claiming to be sick. Broesche's counsel alleges he gave the trial court a doctor's excuse to substantiate the illness, but he has not provided any record citation in support. Broesche's deposition was rescheduled for December 9. Broesche was not prepared to answer questions regarding her damages calculation, and in a hearing after the deposition, the court gave Broesche a day to prepare and ordered the deposition to resume on December 11. However, Broesche was still unable to fully answer damages questions. Further, even though her deposition began around 9:45 a.m., Broesche did not disclose until after 2:00 p.m. that she and her attorney had located another box of relevant documents the night before that had not been produced before the discovery deadline. Broesche claims that one day was not enough time to prepare and that the failure to produce the box of documents was inadvertent. The trial court disagreed, and, based on the record, we cannot say the trial court abused its discretion in imposing sanctions for this course of conduct.

■ A series of incidents around Christmas 2002 received the most attention in the sanctions proceedings. Trial, which had been re-set many times, was set for January 6, 2003 with a December 27, 2002 deadline for exchanging draft jury charges and motions in limine. Broesche hired State Representative Joseph M. Nixon as co-counsel on December 23, 2002 and immediately prepared a motion for legislative continuance. Instead of faxing service to opposing counsel, as had been his practice throughout the litigation, Broesche's counsel drove to the airport post office late that evening to mail the motion and service copies. Despite telephone conversations with and personal deliveries to opposing counsel on December 23 and 24, while they were working to meet the court-imposed December 27 deadlines, Broesche's counsel never mentioned that he had hired Nixon or filed a motion for continuance. TIE's and Jacobson's counsel learned this on December 26, after working on Christmas Eve and Christmas day to meet the deadlines. Nixon never drafted any pleadings and made only one court appearance. The trial court found that Broesche hired Nixon for the purpose of delay and that Broesche's counsel's failure "to timely notify counsel of Mr. Nixon's retention and appearance was intended to cause unnecessary additional litigation fees to TIE and [Jacobson] by allowing them to continue to prepare for trial during the Christmas holidays while [Broesche's counsel] knew he was going to obtain a continuance."

■ Broesche's counsel has defended his actions, explaining that he hired Nixon because he needed help on the case and that he thought the mailed service would arrive the next day, based on his past experience of mailing from the airport. The trial court rejected these explanations, and there is evidence supporting the trial court's conclusion. Broesche's counsel also contends that even if it would have been polite to notify opposing counsel of his retention of Nixon and motion for continuance in another way, he violated no rule of civil procedure in serving by mail and thus sanctions are not appropriate. We reject this argument for two reasons. First, the trial court found that filing the motion for continuance was for the purposes of delay and therefore frivolous and in bad faith, in violation of Rule 13. Second, courts have inherent power to sanction for abuse of the judicial process, even if the conduct at issue does not violate a specific rule or statute. *See Clark*, 217 S.W.3d at 512; *Vela v. Wagner & Brown, Ltd.*, 203 S.W.3d 37, 62 (Tex.App.-San Antonio 2006, no pet.). The trial court did

not abuse its discretion in determining Broesche should be sanctioned for this conduct, even if the conduct did not violate a specific rule or statute.

 The trial court awarded sanctions based not only on these three incidents but on a host of other misconduct. In assessing sanctions, the trial court is entitled to consider the entire course of the litigation. *See Clark*, 217 S.W.3d at 513; *see also Downer v. Aquamarine Operators, Inc.*, 701 S.W.2d 238, 241 (Tex.1985) (noting the presumption in sanctions proceedings that the trial court is familiar with the entire case). Based on the entire record and the instances of misconduct we have discussed, we conclude the trial court did not abuse its discretion in imposing sanctions. We overrule issues seven and eight.

### D. Attorneys' Fees

The trial court awarded TIE $119,598.74 in attorneys' fees for its interpleader. In her ninth issue, Broesche challenges this award. The amount of fees included not only TIE's actual time spent preparing and filing the interpleader but also its time spent defending against Broesche's conversion counterclaim. Broesche does not contend that the hours spent defending the counterclaim were unreasonable. Instead, she contends TIE is entitled to attorneys' fees only for the time spent preparing and filing the interpleader.

 We review a trial court's award of attorneys' fees for an abuse of discretion. *Olmos v. Pecan Grove Mun. Util. Dist.*, 857 S.W.2d 734, 741 (Tex.App.-Houston [14th Dist.] 1993, no writ). An innocent stakeholder prevailing in an interpleader action is entitled to recover attorneys' fees. *Id.* Attorneys' fees are generally not available for a conversion claim. *F.D.I.C. v. Golden Imports, Inc.*, 859 S.W.2d 635, 646 (Tex.App.-Houston [1st Dist.] 1993, no writ). A party seeking attorneys' fees must show the fees were incurred on a claim for which fees are recoverable and thus usually must segregate fees incurred on those claims from fees incurred on claims for which attorneys' fees are not recoverable. *Tony Gullo Motors I, L.P. v. Chapa*, 212 S.W.3d 299, 310, 313–14 (Tex. 2006). However, if time spent on a claim for which attorneys' fees are not recoverable is inextricably intertwined with a claim for which attorneys' fees are recoverable, attorneys' fees are recoverable for both claims. *Stewart Title Guar. Co. v. Aiello*, 941 S.W.2d 68, 73 (Tex.1997); *see also Chapa*, 212 S.W.3d at 310–14. "[W]hen discrete legal services advance both a recoverable and unrecoverable claim[,] ... they are so intertwined that they need not be segregated." *Chapa*, at 313.

 We find that TIE's interpleader and defense of the conversion counterclaim were inextricably intertwined. To recover on its interpleader, TIE had to prove, among other things, that it was facing rival claims to the funds and had reasonable doubts as to which claim was valid. *See McCall v. AXA Equitable Life Ins. Co.*, No. 14–04–01111–CV, 2006 WL 17861, at *2 (Tex.App.-Houston [14th Dist.] Jan. 5, 2006, no pet.) (mem.op.); *Tri–State Pipe & Equip., Inc. v. S. County Mut. Ins. Co.*, 8 S.W.3d 394, 402 (Tex.App.-Texarkana 1999, no pet.). However, Broesche's conversion claim included allegations that TIE and Jacobson colluded to deny her revenues to which she was entitled and that TIE should have paid Broesche the funds instead of choosing to acknowledge Jacobson's unenforceable claim and then interpleading them. If true, these allegations would have shown that TIE did not have reasonable doubts as to which claim was valid. We conclude the interpleader and defense of the counterclaim were inextrica-

bly intertwined because to prevail on its interpleader, TIE had to defeat the conversion counterclaim, and thus legal services to defeat the counterclaim advanced TIE's interpleader. *See Chapa*, 212 S.W.3d at 313–14; *see also Park Cities Ltd. P'ship v. Transpo Funding Corp.*, 131 S.W.3d 654, 662 (Tex.App.-Dallas 2004, pet. denied) (concluding claim and counterclaim were inextricably intertwined because for party to prevail on its claim, it had to oppose and defeat the counterclaim); *Coleman v. Rotana, Inc.*, 778 S.W.2d 867, 874 (Tex.App.-Dallas 1989, writ denied) (same). Therefore, the trial court did not abuse its discretion in awarding TIE attorneys' fees based on its defense of Broesche's conversion counterclaim.[6] *See Stark v. Benckenstein*, 156 S.W.3d 112, 125 (Tex.App.-Beaumont 2004, pet. denied) (finding no abuse of discretion in attorneys' fees award because prosecution of claim and defense of counterclaims were inextricably intertwined); *Park Cities*, 131 S.W.3d at 662 (same); *Coleman*, 778 S.W.2d at 874 (same). We overrule Broesche's ninth issue.

### E. Turnover Judgment

After the trial court entered final judgment and thus Jacobson's judgment for unpaid taxes was no longer interlocutory, Jacobson filed a motion for turnover of the interpleaded funds to satisfy the judgment. On February 27, 2004, the trial court granted Jacobson's turnover motion and ordered disbursal of $54,077.59 of the $55,925.39 in proceeds in the court's registry to Jacobson. Texas Civil Practice and Remedies Code section 31.002 sets forth a

procedure for a judgment creditor to obtain court assistance in securing property to satisfy a judgment. We review a trial court's turnover order for abuse of discretion. *Sivley v. Sivley*, 972 S.W.2d 850, 859 (Tex.App.-Tyler 1998, no pet.).

In her tenth issue, Broesche contends the trial court erred in granting the turnover motion because the funds were in the court's registry pursuant to an illegal garnishment proceeding. We reject this argument. This illegal garnishment theory was the basis of Broesche's summary judgment motion, which the trial court denied and which we have already concluded we cannot review in this appeal. Further, the funds in the court's registry were deposited pursuant to TIE's interpleader, not a garnishment proceeding. Thus, garnishment rules do not apply. *See Daniels v. Pecan Valley Ranch, Inc.*, 831 S.W.2d 372, 383 (Tex.App.-San Antonio 1992, writ denied) (finding garnishment rules no longer applied in interpleader action involving funds held pursuant to writ of garnishment before being deposited in court's registry for interpleader). Funds in the court's registry are subject to the trial court's control, and the court enjoys great latitude in dealing with them. *Burns v. Bishop*, 48 S.W.3d 459, 467 (Tex. App.-Houston [14th Dist.] 2001, no pet.). The trial court did not abuse its discretion in using properly interpleaded funds to enforce a judgment within its jurisdiction. *See Kenseth v. Dallas County*, 126 S.W.3d 584, 598 (Tex.App.-Dallas 2004, pet. denied) ("The trial court always has authority to enforce its judgments and to disburse money held in its registry."); *Burns*, 48

---

6. Broesche cites *General American Life Insurance Co. v. Rodriguez*, 641 S.W.2d 264, 268 (Tex.App.-Houston [14th Dist.] 1982, no writ), for the proposition that attorneys' fees are available only for the interpleader and not for defending a separate claim. That case involved an insurance company that interplead-

ed life insurance proceeds and also defended counterclaims and cross-claims for a separate pool of money involving accidental death benefits. *Id.* at 265–66, 268. Thus, the present case is distinguishable because both the interpleader and the counterclaim involved a dispute over the same funds.

S.W.3d at 467 (finding no abuse of discretion in using funds in court's registry to enforce judgments within court's jurisdiction). We overrule Broesche's tenth issue.

### III. CONCLUSION

Because we conclude the divorce decree is ambiguous regarding the nature of the oil and gas interests awarded to Broesche, we reverse the portion of the trial court's judgment interpreting the decree as a matter of law and remand for further proceedings consistent with this opinion. We affirm the remainder of the trial court's judgment, the June 17, 2003 sanctions order, the February 24, 2004 sanctions order, and the February 27, 2004 turnover order.