# IN THE COURT OF APPEALS OF TENNESSEE
## AT NASHVILLE
September 9, 2010 Session

## AMY GOOLSBY JAMES v. CHADWICK RYAN JAMES

**Direct Appeal from the Circuit Court for Davidson County**
**No. 08D-1831      Carol Soloman, Judge**

---

**No. M2009-02332-COA-R3-CV - Filed October 25, 2010**

---

This is a divorce action. Wife asserts the trial court erred by not granting her a new trial, by declaring the parties divorced rather than awarding the divorce to her, and in its division of property, award of alimony, and by not naming her the primary residential parent and setting child support accordingly. We affirm in part, reverse in part, and remand.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed in part, Reversed in part and Remanded**

DAVID R. FARMER, J., delivered the opinion of the Court, in which ALAN E. HIGHERS, P.J., W.S. and J. STEVEN STAFFORD, J., joined.

Jon S. Jablonski, Nashville, Tennessee, for the appellant, Amy Goolsby James.

Rose Palermo, Nashville, Tennessee, for the appellee, Chadwick Ryan James.

## OPINION

Plaintiff/Appellant Amy Goolsby James (Ms. James) and Defendant/Appellee Chadwick Ryan James (Mr. James) were married in April 2006. At the time of the marriage, Ms. James was 35 years of age; Mr. James was 34 years of age. The parties are college graduates and were working professionals at the time of the marriage. It was a second marriage for both. One child was born of the marriage in July 2007. Ms. James left her job as a pharmaceutical sales representative in December 2007.

In June 2008, Ms. James filed a complaint for divorce in the Circuit Court for Davidson County. In her complaint, Ms. James asserted irreconcilable differences and

inappropriate marital conduct as grounds for divorce. She prayed the court for an equitable division of the parties' property and debt, to be named primary residential parent of the parties' minor child, for child support and temporary and permanent alimony, and reasonable attorney's fees. Mr. James answered and counter-complained, admitting that irreconcilable differences had arisen between the parties, denying allegations of inappropriate marital conduct, and asserting that Ms. James was guilty of inappropriate marital conduct. He prayed for an equitable division of the parties' property and debt, to be named primary residential parent of the parties' minor child and that the court set child support, and for reasonable attorney's fees.

Following acrimonious proceedings, the final hearing in this matter was held on May 11, 2009, and June 29, 2009. The trial court entered a final decree of divorce on July 21, 2009, finding both parties guilty of inappropriate marital conduct and declaring them divorced pursuant to Tennessee Code Annotated § 36-4-129. The trial court designated Mr. James as the primary residential parent of the parties' minor child and adopted the parenting plan proposed by Mr. James. Under the parenting plan, Ms. James was awarded 157 days of parenting time to be exercised every week from 11:00 A.M. on Wednesday until Saturday at 11:00 A.M. Child support was set at $178.00 per month to be paid by Mr. James to Ms. James. The trial court divided the parties' property and debt, and awarded Ms. James the marital residence, which she owned prior to the parties' marriage. The trial court ordered Ms. James to pay $15,000 to Mr. James "as reimbursement for the financial contribution he made to the marital residence during the marriage." It further ordered Ms. James to pay $7,606.74 to Mr. James to equalize the division of property. The trial court awarded no alimony and released Mr. James from obligations under its pendente lite order. The parties were ordered to be responsible for their own legal fees, and costs were divided equally.

On August 19, 2009, Ms. James filed a motion for a new trial or to alter or amend the judgment. In her motion, Ms. James asserted she was entitled to a new trial before another judge because the trial court had "obviously" predetermined the issues. She further prayed for the court to amend the judgment with respect to primary residential status and child support, alimony, and the division of property. Following a hearing on September 25, the trial court denied Ms. James' motion, but amended sections of the parenting plan and increased Mr. James' child support obligation to $469.00 per month. The trial court entered final judgment in the matter on October 12, 2009, and Ms. James filed a timely notice of appeal to this Court.

### Issues Presented

Ms. James raises the following issues for our review, as we slightly re-word them:

(1)     Whether the trial court erred in denying Ms. James' motion for a new trial before a different judge.

(2)     Whether the trial court erred in not awarding the divorce to Ms. James.

(3)     Whether the trial court erred in its credibility determination.

(4)     Whether the trial court erred with respect to the parenting plan where it designated Mr. James primary residential parent.

(5)     Whether the trial court erred in setting child support.

(6)     Whether the trial court erred in not awarding Ms. James pendente lite and transitional alimony.

(7)     Whether the trial court erred in dividing the parties' property and debt.

(8)     Whether the trial court erred in not awarding Ms. James attorney's fees.

### *Discussion*

We first address Ms. James' assertion that the trial court made inappropriate comments during the course of the proceedings in this matter which indicated that it had predetermined matters relating to the parties' child and alimony, that the trial court "failed to observe the confidentiality of settlement negotiations," and that the trial court made statements not supported by the proof in the record. This Court consistently has emphasized that a party must complain or object to an event immediately upon its occurrence, and not wait until after the conclusion of the matter to "silently preserve the event as an 'ace in the hole' to be used in event of an adverse decision" and suppressed when the decision is favorable. *Gotwald v. Gotwald*, 768 S.W.2d 689, 694 (Tenn. Ct. App. 1988)(citing *Spain v. Connolly*, 606 S.W.2d 540 (Tenn Ct. App. 1980)).

We are not insensitive to circumstances wherein the trial court's pattern of conduct, rather than a particular event or occurrence, constitutes the alleged justification for recusal or a trial before another judge. However, such circumstances do not permit the complaining party to wait until after the trial court has issued an unfavorable judgment to request recusal or a new trial before another judge. This rule applies equally in cases where a party asserts partiality on the part of the trial judge. *Todd v. Jackson*, 213 S.W.3d 277, 282 (Tenn. Ct. App. 2006). The failure to request recusal in a timely manner operates as a waiver of the issue. *Id.* (citation omitted). In this case, notwithstanding the trial court's insertion of

comments and remarks during the hearing of this matter, Ms. James' failure to request recusal of the trial court until after the court rendered its judgment operates as a waiver. We accordingly turn to whether the trial court erred with respect to the remaining issues.

Ms. James asserts the trial court erred by not awarding her a divorce based on inappropriate marital conduct. Ms. James' argument, as we perceive it, is that although both parties behaved poorly during the course of the marriage, Mr. James' conduct was more inappropriate than hers. Upon review of the record, we cannot say the evidence preponderates against the trial court's finding that both parties were guilty of inappropriate marital conduct in this case. We accordingly affirm the trial court's judgment declaring the parties divorced pursuant to Tennessee Code Annotated § 36-4-129.

We next turn to Ms. James' assertions that the trial court erred with respect to its determinations of credibility. We observe that the trial court made its findings with respect to credibility in the context of determining primary residential status, thus we address Ms. James' assertion with respect to these issues together. Because it is in the best position to assess witnesses, we afford the trial court considerable deference on matters of witness credibility. *Wells v. Tennessee Bd. of Regents*, 9 S.W.3d 779, 783 (Tenn. 1999). Accordingly, we will not reverse the trial court's findings insofar as they are based on issues of witness credibility in the absence of clear and convincing evidence to the contrary. *Sullivan v. Sullivan*, 107 S.W.3d 507, 510 (Tenn. Ct. App. 2002). Likewise, we review the trial court's determinations with respect to parenting status under an abuse of discretion standard, affording the trial court great deference. *Herrera v. Herrera*, 944 S.W.2d 379, 385 (Tenn. Ct. App. 1996). The details of visitation arrangements also are within the discretion of the trial court. *Hogue v. Hogue*, 147 S.W.3d 245, 251 (Tenn. Ct. App. 2004).

In the final decree of divorce, the trial court stated that it "further finds that the Wife is not a credible witness, and that she has become obsessed with the divorce case above all else." The trial court did not limit its parenting determination to issues of credibility, however, but made specific findings with respect to Ms. James' stability and mental health, temper, history with counseling, and ability to nurture the parties' child. The trial court reviewed the elements enumerated in Tennessee Code Annotated § 36-6-106, and found Mr. James to be comparatively better suited to be named primary residential parent in light of the statutory factors. Further, in her brief to this Court, Ms. James acknowledges inappropriate conduct and submits that "[t]he defense of 'justification' applies to her actions" because her conduct resulted from medication and "the emotional and mental abuse Husband inflicted upon her, causing depression and anxiety." Upon review of the record, we cannot say the trial court abused its discretion by naming Mr. James primary residential parent and in establishing the parenting plan.

We turn next to Ms. James' assertion that the trial court erred in setting pendente lite and prospective child support. With respect to pendente lite support, we note that the support amount set by the trial court included child support and spousal support, and that both the court and the parties appear to have blurred the lines between the two. Ms. James' argument, as we perceive it, is that the trial court erred by not setting child support at the guideline amount in addition to ordering Mr. James to pay her car payment, credit card expenses, and other expenses. Mr. James, on the other hand, asserts the trial court essentially ordered him to pay child support at the guideline amount, but that the support payment was characterized to include payment of various expenses. Upon review of the record, we agree with Mr. James that the trial court's order of pendente lite support does not clearly delineate support ordered as child support and spousal support, but orders Mr. James to pay "$400 per month as temporary child support and alimony" in addition to paying the premiums for health and life insurance, the American Express account, and Ms. James' car note. Following a hearing on Ms. James' motion to alter or amend the order of support, the trial court found that the support amount "including cash payments to the Wife and direct expenses paid on behalf of the Wife and the child, exceeds the child support guideline amount." Although the merging of child support and spousal support in the trial court's order does not foster clarity, in light of the entirety of the arguments in the briefs, we perceive Ms. James' argument to be that the trial court should have ordered Mr. James to pay child support at the statutory amount and greater pendente lite spousal support. Thus, we will address this argument together with Ms. James issue regarding alimony.

The trial court ordered Mr. James to pay prospective child support to Ms. James in the amount of $469.00 per month. Ms. James contends this amount is based on incorrect figures for the number of parenting days, her income and child care expenses. She asserts her income is $1,976.00 per month and not $3,030.00 per month as reflected on the child support worksheet. Ms. James further asserts that her daycare expenses are approximately $560.00 per month and not $416.00.

At the hearing of this matter on June 29, 2009, Ms. James testified that she generally paid a child-care provider $6.00 per hour for approximately 20 hours per week. She conceded that this amount was somewhat estimated. In light of this testimony, we cannot say the trial court erred in its determination of child care expenses. The record also reflects that, when Ms. James submitted her proposed parenting plan in May 2009, she recited income in the amount of $3030 per month. The record further reflects that when this matter was heard on June 29, Ms. James testified that she was employed full-time at an hourly rate of $12.00 per hour. Ms. James further testified that she was no longer working a second job on the weekends. Ms. James' testimony was not refuted. Additionally, although it is undisputed that, prior to December 2007, Ms. James was employed as a pharmaceutical representative earning approximately $100,000 per year, the trial court made no finding of voluntary

unemployment in this case. We accordingly vacate the order of child support and remand for child support to be established at the guideline amount in light of the parties' income when this matter was heard.

We turn to Ms. James' assertion that the trial court erred in dividing the parties' property. An equitable division of marital property must reflect consideration of the factors enumerated in the Tennessee Code, including the duration of the marriage, the value of the separate property held by each spouse, and the estate of each party at the time of the marriage. Tenn. Code Ann. § 36-4-121(c)(1)(6)(7)(2010). The Code expressly stipulates that fault is not to be regarded in the division of property. Tenn. Code Ann. § 36-4-121(a)(1)(2010). Generally, where the marriage has been one of short duration, the courts will seek to return the parties to their pre-marriage relative positions absent extenuating considerations. *Powell v. Powell*, 124 S.W.3d 100, 106-107 (Tenn. Ct. App. 2003). Trial courts are vested with a great deal of discretion when classifying and dividing the marital estate, and their decisions are entitled to great weight on appeal. *Sullivan v. Sullivan*, 107 S.W.3d 507, 512 (Tenn. Ct. App. 2002). Accordingly, unless the court's decision is contrary to the preponderance of the evidence or is based on an error of law, we will not interfere with the decision on appeal. *Id.*

In this case, Ms. James asserts the trial court erred by "equalizing" the division of marital assets and debts. She argues that this equalization was not equitable where Mr. James was financially more capable of repaying the parties' debts. She further argues that there was no basis for the trial court's award of $15,000 to Mr. James for his contribution to the parties' marital residence, which Ms. James owned prior to the marriage.

Upon review of the record, we find that the trial court awarded the parties properties held in their respective names; awarded Ms. James a 2004 vehicle titled jointly; ordered Mr. James to pay the parties' credit card debt; and ordered Mr. James to be divested of any interest in the marital home and to execute a quitclaim deed conveying his marital interest in the home to Ms. James. In light of the short duration of this marriage, the relative status of the parties prior to the marriage, and the totality of the division of property and debt, we cannot say the trial court abused its discretion in this case.

We next turn to whether the trial court erred in its award of pendente lite support and by denying Ms. James' prayer for alimony. The trial court generally has wide latitude in making an award of alimony. *Owens v. Owens*, 241 S.W.3d 478, 490 (Tenn. Ct. App. 2007). An award of alimony depends on the circumstances of each case, and need of the recipient spouse and the obligor spouse's ability to pay are the primary considerations. *E.g., Burlew v. Burlew*, 40 S.W.3d 465, 472 (Tenn. 2001). When determining the type and amount of alimony to be awarded, the trial court must balance several statutory factors, including those

enumerated in section 36-5-121 of the Tennessee Code.

As noted above, when this matter was heard, Ms. James' testimony that she was employed full-time at a rate of $12.00 per hour was unrefuted. It is also not disputed that Mr. James monthly gross income is approximately $7000 per month and that Ms. James earned approximately $100,000 per year before voluntarily leaving her employment in December 2007. As noted above, the trial court made no finding that Ms. James was voluntary underemployed. During the hearing of this matter, however, discussion transpired between Ms. James and the court with regard to the availability of positions in pharmaceutical sales. The trial court apparently assumed such positions remained available notwithstanding economic conditions, and that the healthcare industry had not been affected by the declining economy, without introduction of evidence to support the court's conclusion. We note, however, that, despite the trial court's assumption that the healthcare industry remained untouched by the declining economy, Mr. James asserted at the hearing of this matter that his income as a nurse practitioner had decreased by approximately 10 percent. Further, as noted, the trial court appeared to have merged issues of pendente lite child support and responsibility for marital expenses prior to the final hearing of the matter.

In light of the totality of this record, including the equalization of the property division between the parties and the unrefuted testimony that Ms. James is employed full-time, we believe that Ms. James' prayer for transitional alimony in the amount $1,000 per month for 12 months is reasonable and that such an award is warranted.

Ms. James finally asserts the trial court erred in not awarding her attorney's fees. It is within a trial court's discretion to award attorney's fees as an award of alimony *in solido* in a divorce action. *Owens v. Owens*, 241 S.W.3d 478, 495 (Tenn. Ct. App. 2007). In light of the foregoing, we affirm the trial court on this issue. We likewise decline Ms. James' request for attorney's fees on appeal.

### *Holding*

This matter is remanded to the trial court for further proceedings and entry of a judgment consistent with this Opinion. Costs of this appeal are taxed to the Appellee, Chadwick Ryan James.

_____
DAVID R. FARMER, JUDGE