**Opinion issued June 25, 2018**



In The

# Court of Appeals

For The

# First District of Texas

———————————

## NO. 01-17-00937-CV

———————————

## ANTHONY MCGILL AND AP MCGILL ENTERPRISE, LLC, Appellants

## V.

## GJG PRODUCTIONS, INC., Appellee

---

**On Appeal from the 80th District Court**
**Harris County, Texas**
**Trial Court Case No. 2015-38653**

---

## MEMORANDUM OPINION

Appellee GJG Productions, Inc. sued appellants Anthony McGill and AP McGill Enterprise, LLC (McGill) seeking to recover staging equipment and asserting claims for conversion and civil theft under the Texas Theft Liability Act. The suit was originally filed in the 11th District Court of Harris County. A week

before the second trial setting, the trial court granted partial summary judgment for GJG on liability. The suit was then transferred to the 80th District Court for trial on damages only.

A jury awarded GJG actual damages of $16,073. The final judgment incorporated the partial summary judgment on liability and awarded GJG actual damages of $16,073 and trial and appellate attorneys' fees.

McGill appeals only the trial court's grant of partial summary judgment on liability. We affirm.

### Background

GJG's summary-judgment evidence, consisting of the affidavits of George Grega and Edwin Brown, reflects that GJG, a Houston-based production company that was owned and operated by Grega, provided audio, visual, and staging equipment for special events such as concerts and festivals. GJG and other companies in the industry often rented equipment from each other and hired each other as subcontractors. One of the other production companies GJG worked with over the years, including by subcontracting, was Starr Sound Systems, which was owned by Brown.

McGill planned to put on a Zydeco and Blues festival on the weekend of April 11–12, 2015 on his property in central Houston. A mutual acquaintance introduced Brown to McGill, and McGill hired Starr on February 20, 2015 to

provide audio, lighting, and staging for the festival. Starr then subcontracted the staging portion of the work to GJG. Starr received from McGill a 50% nonrefundable down payment, which is standard in the industry because once a stage is set up, the labor is done and the stage cannot be used elsewhere. GJG charged Starr a 50% nonrefundable down payment for the staging equipment.

GJG tried to set up the stage the Tuesday before the April 11–12 weekend festival to provide Starr and others sufficient time to complete their work after the stage was in place. Brown met Grega and the GJG crew at the property, and Brown then introduced Grega to McGill and explained to McGill that GJG would be handling the staging portion of the work. At the time, McGill was constructing a roof over the area where the stage would be, so he asked GJG to return the next morning. GJG returned the next day as requested and set up the stage. The 40' by 40' stage consisted of 50 stage decks (some that GJG owned and others that it had to rent) that measured 8' by 4', legs and clamps, stairs, and black stage-skirting.

After GJG's crew had set up the stage, McGill postponed the festival until the following weekend because of rain. McGill notified Brown of the postponement and requested that GJG leave the stage in place until after the rescheduled event. Grega asked whether GJG could be paid for the extra week's use of its equipment, especially because GJG had planned on using it for another job that week. Brown relayed the request to McGill, who became angry and

3

refused to pay for the extra time. Ultimately, GJG agreed to leave the stage on McGill's property for the extra week.

The rain continued into the next week, and the following Thursday, April 16, Brown learned that McGill had cancelled the festival. That weekend, Grega called McGill to find out when he could retrieve the staging equipment. McGill told him the ground was still very wet and muddy, so GJG should wait until it dried out before trying to bring trucks in.

On Monday, Brown called McGill to ask about retrieving the equipment. McGill became very angry and told Brown no one could get their equipment until his down payments were refunded. Brown explained to McGill that down payments "are always non-refundable because they compensate vendors for the use of their equipment (that cannot be used elsewhere) and labor that is needed to prepare for a job." McGill hung up before Brown could finish his explanation. Grega tried calling McGill several times over the next week or so but made no progress.

On April 29, Grega called the Houston Police Department for help in getting his equipment. After speaking with an officer, Grega took a crew to McGill's property and discovered the gate was open. They attempted to enter, but were met by McGill, who refused to let them get the staging equipment and ordered them to leave. Grega and the GJG crew parked across the street, where Grega once again

4

called police for help. This time, an officer was dispatched to the scene, and he spoke with McGill, who continued to refuse to let GJG get its the equipment. After speaking with the district attorney's office, the officer said that police could not assist because it was a civil matter.

Before filing suit, GJG sent a demand letter to McGill, requesting the release of the staging equipment and the cost of replacing the stage decks it had rented. McGill received the letter but never responded. GJG then filed suit, alleging causes of action for conversion and civil theft under the Theft Liability Act (TLA). It also sought and obtained a temporary restraining order that prevented McGill from denying GJG access to its equipment. In support of its request for injunctive relief, GJG submitted an affidavit from Brown.

An hour before a temporary injunction hearing, McGill filed an answer and a petition in interpleader in which he asserted that he had contracted with Starr, not with GJG, and claimed that he "does not know to whom the stage equipment belongs." Brown attended the hearing and reaffirmed the statement in his affidavit that GJG, not Starr, owned the equipment. McGill, through his counsel, agreed to let GJG onto his property to get its staging equipment, but only if GJG paid McGill a "storage fee" of $750. GJG reluctantly agreed to pay because it needed the equipment but maintained its position that McGill had been holding the equipment—not storing it—to get his down payment returned.

5

Thereafter, GJG served McGill with requests for admissions, but McGill did not timely respond. *See* TEX. R. CIV. P. 198.2(c) ("If a response is not timely served, the request is considered admitted without the necessity of a court order."); *id.* R. 198.3 ("A matter admitted under this rule is conclusively established as to the party making the admission unless the court permits the party to withdraw or amend the admission."). GJG moved for partial summary judgment on liability only for its conversion and TLA claims. GJG did not rely on McGill's deemed admissions in support of its motion.

In his summary-judgment response, McGill submitted his own affidavit and emails that he had allegedly sent to Brown. With its reply to McGill's response, GJG objected to McGill's affidavit to the extent that it contradicted his deemed admissions. A party may not controvert a deemed admission. *See Marshall v. Vise*, 767 S.W.2d 699, 700 (Tex. 1989). But GJG also explained that, irrespective of the deemed admissions, McGill's affidavit did not raise a material fact issue.

A week before the case was set for trial, GJG's summary-judgment motion was heard. After the hearing, McGill filed a motion to strike his deemed admissions, claiming that he failed to timely answer because of confusion between his substituting attorney and his withdrawing attorney. He also answered the requests for admissions—over fourteen months late.

Grega died before trial, and the parties agreed to a trial continuance. The trial court then granted GJG's motion for partial summary judgment and sustained GJG's objections to McGill's affidavit.

**Standard of Review**

We review summary judgments de novo. *Valence Operating Co. v. Dorsett*, 164 S.W.3d 656, 661 (Tex. 2005). The movant has the burden of showing that no genuine issue of material fact exists and that it is therefore entitled to judgment as a matter of law. *Nixon v. Mr. Prop. Mgmt. Co.*, 690 S.W.2d 546, 548 (Tex. 1985). A plaintiff moving for summary judgment on its own claim must establish each element of the claim as a matter of law. *MMP, Ltd. v. Jones*, 710 S.W.2d 59, 60 (Tex. 1986); *Castillo Info. Tech. Servs., LLC v. Dyonix, L.P.*, 554 S.W.3d 41, 45 (Tex. App.—Houston [1st Dist.] 2017, no pet.). In reviewing a motion for summary judgment, we must consider whether reasonable and fair-minded jurors could differ in their conclusions in light of all of the evidence presented. *See Goodyear Tire & Rubber Co. v. Mayes*, 236 S.W.3d 754, 755 (Tex. 2007). We must consider all the evidence in the light most favorable to the nonmovant, indulging every reasonable inference in favor of the nonmovant and resolving any doubts against the motion. *See id.* at 756.

7

**Analysis**

McGill asserts in a sole issue that the trial court erred in granting partial summary judgment on liability because a fact issue exists. McGill further argues that the trial court abused its discretion in sustaining GJG's objections to McGill's summary-judgment evidence and in refusing to strike the deemed admissions.

We first address GJG's argument that McGill's brief is inadequate and acts as a waiver of any appealable issue. An appellant's "brief must contain a clear and concise argument for the contentions made, with appropriate citations to authorities and to the record." TEX. R. APP. P. 38.1(i). Failure to comply with this rule will waive an issue on appeal. *Ginn v. NCI Bldg. Sys., Inc.*, 472 S.W.3d 802, 841 n.35 (Tex. App.—Houston [1st Dist.] 2015, no pet.). Nonetheless, because "disposing of appeals for harmless procedural defects is disfavored," *Weeks Marine, Inc. v. Garza*, 371 S.W.3d 157, 162 (Tex. 2012), courts construe briefing rules liberally. TEX. R. APP. P. 38.9 (entitled "Briefing Rules to Be Construed Liberally"). Accordingly, an appellant's brief will comply with this adequacy rule if the brief directs the court's attention to the complained-of error and contains relevant citations. *Id.*; *see also Medeles v. Nunez*, 923 S.W.2d 659, 662 (Tex. App.—Houston [1st Dist.] 1996, writ denied), *overruled on other grounds by Barker CATV Constr., Inc. v. Ampro, Inc.*, 989 S.W.2d 789, 792–93 (Tex. App.—Houston [1st Dist.] 1999, no pet.).

Although McGill's brief is atypically *brief*, it asserts with appropriate citations to the record and to applicable authorities that the trial court erred in granting GJG's summary-judgment motion because McGill's affidavit raised a material fact issue and because the trial court abused its discretion in sustaining GJG's objections and in refusing to strike the deemed admissions. Accordingly, we reject GJG's argument.

To prove its TLA claim, GJG was required to prove that McGill (1) appropriated its property; (2) acted without its consent; and (3) acted with the intent to deprive GJG of its property. TEX. CIV. PRAC. & REM. CODE § 134.002(2); TEX. PENAL CODE § 31.03(a)–(b)(1). "Deprive" means, among other things, "to restore property only upon payment of a reward or other compensation." TEX. PENAL CODE § 31.01(2)(B). Under the TLA, the prevailing party may recover attorney's fees. TEX. CIV. PRAC. & REM. CODE § 134.005(b).

For its conversion claim, GJG was required to prove that (1) it owned, had possession of, or was entitled to possession of the property; (2) the defendant, without authorization, assumed and exercised control over the property to the exclusion of, or inconsistent with, the plaintiff's rights; (3) the plaintiff demanded return of the property; and (4) the defendant refused to return the property. *Stroud Prod., L.L.C. v. Hosford*, 405 S.W.3d 794, 811 (Tex. App.—Houston [1st Dist.] 2013, pet. denied). Conversion is similar to civil theft but does not require proof of

intent to deprive. *See Winkle Chevy-Olds-Pontiac, Inc. v. Condon*, 830 S.W.2d 740, 746 (Tex. App.—Corpus Christi 1992, writ dism'd). Attorney's fees are not recoverable for conversion. *Broesche v. Jacobson*, 218 S.W.3d 267, 277 (Tex. App.—Houston [14th Dist.] 2007, pet. denied).

Because we agree with GJG that McGill's summary-judgment evidence does not raise a material issue of fact, we need not address whether the trial court abused its discretion in sustaining GJG's objections to McGill's summary-judgment evidence and in refusing to strike the deemed admissions.

McGill's affidavit states in pertinent part:

On or about February 20, 2015, I on behalf of my company, entered into an agreement with Edwin Brown of Starr Sound Systems to provide audio sound and staging for an event to be held on the weekend of April 11, 2015, and April 12, 2015.

At no time did I meet Mr. George Grega, before engaging Mr. Brown for the services. Mr. Brown did not inform me of his subcontract with Mr. Grega or G.J.G. Productions to provide services to me or A.P. McGill Enterprises, LLC.

After the festival was cancelled, due to inclement weather, I made several attempts to contact Mr. Brown to find out who the equipment belonged to or for him to pick the equipment up at a date certain, as shown by the Exhibit attached hereto labeled as Exhibits 1-4. I affirm that the attached exhibits 1-4 were true and correct emails that were sent to the email address on file for Mr. Edwin Brown.

Mr. Brown did not respond to my request for information as to when he would pick up the property we were storing for him.

Mr. Grega retrieved his property on or about July 22, 2015 and paid [a] storage fee to my company, as we had stored the property for several months.

The pertinent parts of McGill's four emails, with their respective dates, state the following:

April 16, 2015: Mr. Edwin Brown, this [is] our second email to you trying to make arrangement with you to pick up your stage, and refund our money to us from the invoice. . . .

April 17, 2015: I would like the name of the person who owns the stage on my property.

April 18, 2015: We need the name of the owner and his company name to whom this stage belongs to, his phone number and address as soon as possible, so we can make arrangements with his company to pick up the stage.

April 19, 2015: Mr. Brown, this is Anthony McGill. I am in Houston at this time[. P]lease pick up your stage off the property at . . . .

GJG asserts that McGill's affidavit and purported emails do not create a fact issue on any elements of its TLA or conversion claims. In response to McGill's argument that he did not meet Grega or know that GJG was Starr's subcontractor, GJG correctly points out that whether and when McGill met Grega are irrelevant to its TLA or conversion claims. McGill does not explain how the circumstances of McGill's first meeting with Grega creates a fact issue. McGill does not dispute that GJG owned the staging equipment or that both Grega and Brown requested that he return it. Even if he did not know Grega, the evidence shows that he at least knew that GJG owned the equipment, and it is undisputed that McGill demanded and

11

was paid $750 as a condition of returning the equipment. See TEX. PENAL CODE § 31.01(2)(B) (defining "deprive" as, among other things, "to restore property only upon payment of a reward or other compensation").

GJG also notes that, on appeal, McGill mischaracterizes his own affidavit. McGill's affidavit does not state that he never met Grega; it states that he did not meet Grega "before engaging Mr. Brown for the services." Because McGill hired Starr on February 20, 2015, his affidavit does not contradict Brown's and Grega's assertions that McGill met Grega in April when Grega arrived to set up the staging equipment and that McGill became aware at that time that GJG owned the equipment.

McGill also cites the emails attached to his affidavit as evidence that he repeatedly asked Brown to remove the equipment from the site, as well as inquired as to the owner of the equipment. GJG again points out that McGill does not explain how the emails negate GJG's claims.

GJG notes that the email address that McGill used for Brown is different from Brown's email address on Starr's invoice to McGill. Also, McGill did not produce summary-judgment evidence that the email he used for Brown was Brown's email address or that Brown received any of the four emails.

GJG points out that the timing of these emails is important. The first email is dated April 16, the same day that McGill cancelled the festival. In that email,

McGill stated that he wanted a refund of his down payment, which is consistent with GJG's position that McGill demanded compensation before he would allow Grega to get the equipment. The second email is from the next day and asked for the name of the person who owned the stage, which contradicts McGill's allegation in his pleadings that he thought Starr owned the equipment. The third email is dated a day later, April 18, and asks for the company name, phone number, and address of the person who owned the stage, which reflects that McGill knew that a company other than Starr owned the stage.

Additionally, none of these emails contradict Brown's statement that he called McGill the following Monday, April 20, to make arrangements to get the equipment and that McGill hung up on him when Brown explained that the down payment was nonrefundable. The emails also do not address Grega's statements that, after April 18, he too called McGill and asked when Grega could get the equipment and that McGill refused to allow GJG to get the equipment on April 21 when Grega was accompanied by a police officer.

McGill's final email, dated June 2, nearly six weeks later, asks Brown to "please pick up your stage." This is inconsistent with the earlier emails in which McGill acknowledged that Brown did not own the stage. And this final email does not raise a fact issue on any element of GJG's claims because it does not negate

13

McGill's prior and subsequent demands that he be compensated before allowing GJG to get its stage.

We conclude that McGill's summary-judgment evidence does not create a material fact issue on liability for GJG's TLA or conversion claims. The trial court did not err in granting partial summary judgment for GJG, and we overrule McGill's sole issue.

## Conclusion

We affirm the trial court's partial summary judgment and, as a result, also affirm the final judgment.

Richard Hightower
Justice

Panel consists of Chief Justice Radack and Justices Higley and Hightower.

14