**Opinion filed April 28, 2022**



In The

# Eleventh Court of Appeals

_____

## No. 11-20-00080-CV
_____

## GLEN D. AARON, II, Appellant

## V.

## STEPHEN FISHER, JAMES FISHER, KATIE ELAM WARD, JAMES O. "TONY" ELAM, STEPHEN CORY ELAM, DEBBIE ELAM, AND PIONEER NATURAL RESOURCES USA, INC., Appellees

**On Appeal from the 118th District Court**
**Glasscock County, Texas**
**Trial Court Cause No. 1865**

### O P I N I O N

In this appeal, we must determine whether conveyances in two mineral deeds bestowed separate property upon the grantees by gift *or* conveyed an equal community property interest to the grantees and their spouses by sale for consideration. The trial court concluded that each conveyance constituted a sale for

consideration. We agree and, for the reasons stated in this opinion, affirm the trial court's judgment.

Appellant, Glen D. Aaron, II, raises eight issues in this appeal. In his first seven issues, Appellant challenges the trial court's grant of summary judgment in favor of Appellees, Stephen and James Fisher (the Fishers), Katie Elam Ward, James O. "Tony" Elam, and Debbie Elam (the Elams), and Stephen Cory Elam (S.C.). In his eighth issue, Appellant challenges the trial court's order by which it discharged Pioneer Natural Resources USA, Inc. (Pioneer) from the underlying suit after Pioneer filed an interpleader action against Appellees and deposited the royalties that were generated from the disputed mineral interests into the registry of the trial court.

## I. *Background Facts*

In April 1962, Houston Parker (Houston) conveyed to his wife, Lilly, for "ten and no/100 dollars ($10.00) cash in hand paid and other good and valuable consideration," an undivided one half (1/2) interest to the oil, gas, and minerals in and under "the South 120 acres of the East One-half (E/2) of Section No. Thirty-eight (38), Block No. Thirty-five (35), Township 1-South, T. & P. Ry. Co. Surveys, Glasscock & Midland Counties, Texas." Houston died in 1971.

In June 1971, Lilly conveyed to each of her six children, which included W.T. Aaron (W.T.) and Chester Little (Chester), "[a]n undivided One Twelfth (1/12) [non-participating] interest" in the minerals in and under the land as described in the 1962 mineral deed that Lilly had received from Houston. In addition to the recited consideration of "ten & no/100 dollars ($10.00) cash in hand paid and other good and valuable consideration," each deed specified that "[t]*his sale* is made subject to any rights now existing to any lessee or assigns under any valid and subsisting oil and gas lease." (emphasis added). A series of intestate successions later unfolded that are central to the questions that we must address.

2

W.T. was married to Lavon Aaron (Lavon) from 1945 until 2000, when he died intestate. W.T. and Lavon never had children. Lavon later died intestate in 2005. She was survived only by her sister, Verda Fisher (Verda), who also died intestate in 2016. Verda is survived by two sons, James and Stephen Fisher (the Fishers).

Chester married Audra Elam (Audra) around the beginning of World War II. They remained married until Chester died intestate in 1998. Chester was survived by Audra, his sisters (Martha Hethcoat and Lillie Clement), and his half-brothers (W.T. and Glen Aaron I).

Audra died intestate in 2012. Audra had two siblings, both of whom predeceased her; however, Audra's siblings are both survived by eligible intestacy descendants. Audra's brother, Oliver, is survived by his only son, James O. "Tony" Elam (an Elam Appellee). Audra's other brother, Otto, and his wife, Dora, had four children. One of their children is Katie Elam Ward (an Elam Appellee). Another child, Stephen Elam, died intestate, but is survived by his wife, Debbie (an Elam Appellee). Stephen and Debbie had one child, S.C. Elam.

By her 1971 conveyance, Lilly also conveyed an undivided one-twelfth non-participating mineral interest to her son Glen Aaron I, Appellant's father. Appellant's father and mother both died intestate, and Appellant is their only child. In this case, Appellant sought a declaration from the trial court that he inherited and is the title owner of the interest that his father received from Lilly in 1971. However, Appellant has also claimed that he is entitled, by inheritance, to portions of the one-twelfth interests that Lilly conveyed to W.T. and Chester in 1971.

After Lavon passed, Appellant filed an affidavit of death and heirship in Glasscock County in which Appellant misrepresented that Lavon's only heirs were a deceased niece and four surviving nephews, of which Appellant was one. Appellant also submitted an amended oil and gas division order to Pioneer in which

3

Appellant represented that Lavon's royalty interest should be divided and paid to Appellant and the other four purported heirs, in equal amounts. Pioneer, in reliance on this affidavit and the amended division order, paid Appellant $5,521.16 in royalties that Pioneer credited to the mineral interest originally conveyed from Lilly to W.T.

In December 2017, Appellant sued Pioneer contending that "the interest ordered to him . . . was less than [what is] actually owned by [Appellant]." Appellant asked the trial court to declare that Appellant was entitled to larger royalty payments based on the increase in the amount of his ownership interest that had resulted from "the intestate succession[s] of . . . [Chester] . . . and [W.T.]." Pioneer later filed a "Petition in Intervention for Interpleader" and joined the Fishers, the Elams, and S.C. as interpleader-defendants because of their competing claims to the existing unpaid royalties and future royalties that Appellant had sought to recover from Pioneer. Pioneer made an unqualified tender of the disputed funds into the registry of the trial court and, by agreement of the parties, was later dismissed from the suit with prejudice.

Prior to Pioneer's exit from the case, the Fishers filed a trespass to try title cross-claim against Appellant and asserted their own claim to ownership over the interest that Lilly had conveyed to W.T. in 1971. The Fishers also sought compensatory damages from Appellant for "money had and received" for the payments he had erroneously received from Pioneer based on the production of the mineral interest that belonged to W.T. Appellant nonsuited his original claims but subsequently filed a competing trespass to try title action against the Fishers in which he asked the trial court to grant him title to "portion[s] of the W.T. Aaron Estate and Chester I. Little Estate . . . under [the] Texas Intestate Succession law."

The Fishers, Elams, and S.C. all moved for summary judgment, in which they asserted that (1) they were entitled to their respective claimed portions of the

4

disputed mineral interests and (2) Appellant's claims against them were barred by the residual four-year statute of limitations that is applicable to claims in which the claimant seeks to reform and correct a deed because of a mistake. In response, Appellant filed a motion for summary judgment only against the Fishers. The trial court later granted Appellees' collective motion and denied Appellant's motion.

The Fishers separately moved for summary judgment against Appellant on their money had and received cross-claim. In support of their motion, the Fishers relied primarily on a business records affidavit prepared by Carrie Pitts, a Pioneer managerial employee, who attested that Pioneer, in reliance upon the false affidavit of death and heirship and the amended division order submitted to it by Appellant, had paid to Appellant $5,521.16 in royalty payments that belonged to the Fishers.

## II. *Motions for Summary Judgment*

In his first, second, fourth, sixth, and seventh issues, Appellant argues that the trial court erred when it granted summary judgment in favor of Appellees on their claims to title because it failed to conclude that: (1) the mineral interests that Lilly conveyed to W.T. and Chester constituted gifts, rather than sales for consideration; and (2) the conveyed mineral interests that W.T. and Chester received from Lilly was their respective separate property.

In his fifth issue, Appellant argues that the trial court erred when it granted the Fishers' motion for summary judgment on their claim against Appellant for money had and received because the summary judgment evidence was insufficient to justify the compensatory damages awarded to them in the amount of $5,521.16.

In his third issue, Appellant argues that the trial court erred when it: (1) granted S.C.'s motion for summary judgment on the merits; and (2) considered S.C.'s motion because (a) he did not move for summary judgment until after Appellant had nonsuited his claims and (b) S.C. had not asserted any claims for affirmative relief before the nonsuit was filed.

A. *Standard of Review*

We review a trial court's grant of summary judgment de novo. *Concho Res., Inc. v. Ellison*, 627 S.W.3d 226, 233 (Tex. 2021) (citing *Valence Operating Co. v. Dorsett*, 164 S.W.3d 656, 661 (Tex. 2005)). To prevail under the traditional summary judgment standard, the movant has the burden to establish that there is no genuine issue of material fact and that it is entitled to judgment as a matter of law. TEX. R. CIV. P. 166a(a), (c); *ConocoPhillips Co. v. Koopmann*, 547 S.W.3d 858, 865 (Tex. 2018); *Provident Life & Accident Ins. Co. v. Knott*, 128 S.W.3d 211, 216 (Tex. 2003). If the movant establishes its summary judgment burden, the burden shifts to the nonmovant to present evidence raising a genuine issue of material fact that would preclude the grant of summary judgment. *Amedisys, Inc. v. Kingwood Home Health Care, LLC*, 437 S.W.3d 507, 510–11 (Tex. 2014); *M.D. Anderson Hosp. & Tumor Inst. v. Willrich,* 28 S.W.3d 22, 23 (Tex. 2000).

To determine if a genuine issue of material fact exists, we review the evidence in the light most favorable to the nonmovant, and we indulge every reasonable inference and resolve any doubts in the nonmovant's favor. *KMS Retail Rowlett, LP v. City of Rowlett*, 593 S.W.3d 175, 181 (Tex. 2019); *Knott*, 128 S.W.3d at 215. We credit evidence that is favorable to the nonmovant if reasonable jurors could do so, and we disregard contrary evidence unless reasonable jurors could not. *Samson Expl., LLC v. T.S. Reed Props., Inc.*, 521 S.W.3d 766, 774 (Tex. 2017); *Mann Frankfort Stein & Lipp Advisors, Inc. v. Fielding*, 289 S.W.3d 844, 848 (Tex. 2009). The evidence raises a genuine issue of material fact if "reasonable and fair-minded jurors could differ in their conclusions in light of all the evidence presented." *Goodyear Tire & Rubber Co. v. Mayes*, 236 S.W.3d 754, 755 (Tex. 2007).

When, as in this case, *both* parties move for summary judgment and the trial court grants one motion but denies the other, we review all of the summary judgment evidence presented, determine all questions presented, and render the judgment that

the trial court should have rendered. *Lightning Oil Co. v. Anadarko E&P Onshore, LLC*, 520 S.W.3d 39, 45 (Tex. 2017) (citing *Merriman v. XTO Energy, Inc.*, 407 S.W.3d 244, 248 (Tex. 2013)); *Mann Frankfort Stein & Lipp Advisors, Inc.*, 289 S.W.3d at 848. When the trial court does not specify the grounds for its ruling, a summary judgment must be affirmed if any of the grounds on which the judgment is sought are meritorious. *Merriman*, 407 S.W.3d at 248; *Knott*, 128 S.W.3d at 216 (citing *Cincinnati Life Ins. Co. v. Cates*, 927 S.W.2d 623, 626 (Tex. 1996)).

B. *The 1971 deeds conveyed the disputed mineral interests by sale for consideration, rather than by gift.*

1. *Applicable Law*

We review unambiguous mineral deeds de novo, and we limit our scope of review to the four corners of the document; we also exclude any extrinsic evidence from consideration. *See Luckel v. White*, 819 S.W.2d 459, 461–62 (Tex. 1991). In this case, we conclude that the 1971 deeds are unambiguous. Therefore, our primary concern is to construe these deeds to ascertain the true intention of the parties. *Stewman Ranch, Inc. v. Double M. Ranch, Ltd.*, 192 S.W.3d 808, 810 (Tex. App.—Eastland 2006, pet. denied). What controls is the intent that was actually expressed in the language of the deed, not what the parties privately intended but failed to express. *Moon Royalty, LLC v. Boldrick Partners*, 244 S.W.3d 391, 394 (Tex. App.—Eastland 2007, no pet.). If a court can ascertain the parties' intent from the language of the deed, "that should [generally] . . . be the end of our analysis." *Wenske v. Ealy*, 521 S.W.3d 791, 794 (Tex. 2017). Further, parol evidence is not admissible to contradict the recital of consideration in a deed if a party seeks to prove that the deed is actually a "gift" deed. *Johnson v. Driver*, 198 S.W.3d 359, 363–64 (Tex. App.—Tyler 2006, no pet.); *Massey v. Massey*, 807 S.W.2d 391, 405 (Tex. App.—Houston [1st Dist.] 1991, writ denied).

7

2. *Analysis*

With regard to Appellant's first, second, fourth, sixth, and seventh issues, we must determine whether the one-twelfth mineral interests that Lilly separately conveyed by deed to W.T. and Chester in 1971 are characterized as gifts or sales for consideration. Because these issues are interrelated, we will consider them together.

It is Appellant's primary contention that Lilly's 1971 conveyances were gifts. If this is true, the mineral interests conveyed to W.T. and Chester by these deeds would be their separate property. However, if Lilly's conveyances are deemed to be sales for consideration, then the interests that W.T. and Chester received from her would be their community property that belonged equally to their respective spouses. As such, title to the disputed mineral interests would rest with Appellees.

As we have said, the language in the 1971 deeds is not ambiguous; therefore, we will construe and harmonize the deed's provisions.[1] Both deeds recite that Lilly "grant[s], bargain[s], *sell[s]*, convey[s], transfer[s], assign[s], and deliver[s the disputed mineral interests] unto [W.T. and Chester, respectively]" (emphasis added). The deeds further contain a provision that Lilly does so "for and in consideration of the sum of Ten & no/100 DOLLARS ($10.00) cash in hand paid and [for] other good and valuable considerations."[2] No other deed language or recital indicates or suggests that Lilly intended to gift the disputed interests to W.T. and Chester. In fact, in both deeds Lilly clearly provided that "[t]*his sale* is made subject to any

---

[1]We may determine an ambiguity as a matter of law for the first time on appeal. *Royal Maccabees Life Ins. Co. v. James*, 146 S.W.3d 340, 347 (Tex. App.—Dallas 2004, pet. denied) (citing *Sage St. Assocs. v. Northdale Constr. Co.*, 863 S.W.2d 438, 444–46 (Tex. 1993)). To determine whether a mineral deed is ambiguous, we look only to its text and do not consult parol evidence. *See J.M. Davidson, Inc. v. Webster*, 128 S.W.3d 223, 230 (Tex. 2003).

[2]Deeds ordinarily embody such recitals of nominal consideration and "other good and valuable consideration." *See, e.g.*, *Troxel v. Bishop*, 201 S.W.3d 290, 294 (Tex. App.—Dallas 2006, no pet.); *see also Parker v. Dodge*, 98 S.W.3d 297, 301 (Tex. App.—Houston [1st Dist.] 2003, no pet.) (explaining that courts "normally will not inquire into the adequacy of consideration supporting a contract[,]" unless there is evidence of "unconscionability, bad faith, or fraud").

rights now existing to any lessee or assigns under any valid and subsisting oil and gas lease heretofore executed and now of legal record" (emphasis added). We disagree with Appellant's contention that we should go beyond the four corners of the deeds and disregard its plain language in order to discern some purported evidence of a gift. Because a plain reading of the deeds shows that Lilly's conveyances of an undivided one-twelfth nonparticipating mineral interest each to W.T. and Chester constituted a *sale for consideration*, these mineral interests became their community property when the conveyances were consummated. As such, these interests ultimately passed to their spouses.

When W.T. and Chester both died intestate and without any surviving children, the community property accumulated during their marriages became the sole property of their surviving spouses, Lavon and Audra, respectively. *See* TEX. EST. CODE ANN. § 201.003(b) (West 2020). Thus, when Lavon and Audra subsequently died intestate, and without any surviving children or parents, the disputed mineral interests would have first passed to their surviving siblings and then eventually to Appellees, not to Appellant. *See id.* § 201.001(a), (c), (e). Here, the mineral interest that Lilly conveyed to W.T. passed to Lavon, then to her only surviving sibling Verda, and finally to Verda's two sons, the Fishers. Similarly, the mineral interest that Lilly conveyed to Chester passed to Audra, and then to the heirs of her two brothers, which includes the Elams and S.C.

We conclude, as the trial court did, that the disputed conveyances and mineral interests were *sold for consideration*, rather than gifted as Appellant suggests. Therefore, and contrary to Appellant's contention, Article XVI, Section 15 of the Texas Constitution is inapplicable because the mineral interests conveyed by Lilly to W.T. and Chester became, upon receipt, their community property, not their *separate* property. *See* TEX. CONST. art. XVI, § 15 (which defines property received by *gift* during marriage to be the separate property of the receiving spouse).

9

Moreover, Section 201.002 of the Estates Code, which dictates how *separate* property is to be distributed in the event of an intestate succession, is equally inapplicable because this section of the code would only be pertinent if the disputed mineral interests that W.T. and Chester received were characterized as *separate* property. In this case, it cannot. Because the trial court did not err when it granted Appellees' motions for summary judgment, we overrule Appellant's first, second, fourth, and sixth issues.

In his seventh issue, Appellant contends that the trial court erred when it concluded that the residual four-year statute of limitations barred his claim for title to the disputed mineral interests. Because of our holdings above, we need not address Appellant's seventh issue. *See* Tex. R. App. P. 47.1.

C. *The Fishers conclusively established their claim for money had and received.*

1. *Applicable Law*

"A claim for 'money had and received' is equitable in nature." *Plains Expl. & Prod. Co. v. Torch Energy Advisors Inc.*, 473 S.W.3d 296, 302 n.4 (Tex. 2015). It is applied to prevent unjust enrichment and "to restore money where equity and good conscience require [a] refund." *Id.* This cause of action focuses solely on justice and "whether the defendant holds money, which . . . belongs to the plaintiff." *Staats v. Miller*, 243 S.W.2d 686, 687–88 (Tex. 1951) (citing *United States v. Jefferson Elec. Mfg. Co.*, 291 U.S. 386, 402–03 (1934)). Therefore, to prove their claim for money had and received, the Fishers were required to establish that Appellant held money that, in equity and good conscience, belonged to them. *See id.*; *Edwards v. Mid-Continent Office Distrib., L.P.*, 252 S.W.3d 833, 837 (Tex. App.—Dallas 2008, pet. denied). It is immaterial whether Appellant acquired the money wrongfully. *See Doss v. Homecomings Fin. Network, Inc.*, 210 S.W.3d 706, 711 (Tex. App.—Corpus Christi–Edinburg 2006, pet. denied). As such, the sole

inquiry is whether Appellant received money that rightfully belonged to the Fishers. *See Everett v. TK-Taito, L.L.C.*, 178 S.W.3d 844, 860 (Tex. App.—Fort Worth 2005, no pet.).

Here, because the Fishers proved their claim for money had and received, they were entitled to actual damages in the amount that Appellant wrongfully received in their stead. *See GRCDallasHomes LLC v. Caldwell*, 619 S.W.3d 301, 310 (Tex. App.—Fort Worth 2021, pet. denied).

2. *Analysis*

When they moved for summary judgment, the Fishers submitted the affidavit of Carrie Pitts, a manager employed by Pioneer, in support of their claim. Pitts stated that Pioneer received an affidavit of death and heirship and an amended division order from Appellant. The affidavit of death and heirship contained the false assertion that Appellant was one of Lavon's five heirs. Further, the amended division order was erroneous in that its effect was to credit and equally divide Lavon's royalty interest to the five named heirs. Pitts stated that, in its reliance on those documents, Pioneer "paid [Appellant] in the amount of $5,521.16 through August 30, 2019[,] with respect to mineral interests of Lavon."

First, Appellant complains that the Pitts affidavit does not specify when Appellant *began* receiving the payments that belonged to the Fishers. Although the royalty payment history offered by Appellant demonstrates that the payments began sometime in 2014, we can discern that these payments commenced on or about July 29, 2014, because that is the date that Pioneer received the amended division order from Appellant and upon which Pioneer relied in vesting Appellant with one-fifth of Lavon's one-twelfth royalty interest.

Next, Appellant complains that the royalty payment amount stated in the Pitts affidavit is not supported or substantiated by any sort of reliable accounting method. Appellant advanced these complaints in an objection that he urged to the trial court

11

and attached a document to his objection that listed all royalty payments that were made to him by Pioneer from March 2009 to March 2018. This document demonstrates that Appellant began receiving one-fifth of Lavon's royalty interest from Pioneer "sometime" in 2014 and that he *received* an initial payment of $4,139.98. Appellant avers that the discrepancy between this amount and the $5,521.16 amount referenced in the Pitts affidavit creates a disputed issue of material fact or otherwise defeats the Fishers' conclusive entitlement to the $5,521.16 in damages they sought from him. However, in her affidavit, Pitts clearly states that the payments to Appellant erroneously continued until August 2018. By accumulating the remaining payments that are listed in the document that Appellant attached to his objection—payments made through March 2018—the amount totals $5,312.54. Because other small, additional payments were made to Appellant between March 2018 and August 2018, it is reasonable to conclude that the total royalties that were erroneously paid to Appellant by Pioneer is $5,521.16, as stated in the Pitts affidavit. Thus, Appellant's summary judgment evidence does not controvert the Pitts affidavit.

Moreover, although there is nothing in the Pitts affidavit or the Fishers' motion for summary judgment that demonstrates or explains *how* they arrived at the $5,521.16 amount, it is clear from the Pitts affidavit that Pioneer had paid royalties to Appellant in the amount of $5,521.16 for Lavon's share of the mineral interest that Appellant claimed in 2014 when he signed the amended division order. Although Appellant *questioned* this figure, he did not present any summary judgment evidence to controvert or dispute it. As such, we hold that the Fishers conclusively established their entitlement to $5,521.16 on their money had and received claim. Therefore, the trial court did not err when it granted their motion for summary judgment on this claim. Accordingly, we overrule Appellant's fifth issue.

D. *Before Appellant filed his notice of nonsuit, S.C. asserted a claim for affirmative relief that survived the nonsuit.*

1. *Applicable Law*

"Texas Rule of Civil Procedure 162 provides that a plaintiff may take a nonsuit at any time before introducing all of [his] evidence." *Rogers v. Bagley*, 623 S.W.3d 343, 357 (Tex. 2021). An order signed by the trial court is not required. *Epps v. Fowler*, 351 S.W.3d 862, 868 (Tex. 2011) (citing *Travelers Ins. Co. v. Joachim*, 315 S.W.3d 860, 862 (Tex. 2010)). A nonsuit extinguishes a case or controversy from "the moment it is filed . . . with the clerk of the [trial] court." *Univ. of Tex. Med. Branch at Galveston v. Estate of Blackmon ex rel. Shultz*, 195 S.W.3d 98, 100 (Tex. 2006) (quoting *Shadowbrook Apartments v. Abu-Ahmad*, 783 S.W.2d 210, 211 (Tex. 1990)).

A plaintiff's nonsuit, however, "shall not prejudice the right of an adverse party to be heard on a pending claim for affirmative relief." TEX. R. CIV. P. 162; *see also Epps*, 351 S.W.3d at 868; *Univ. of Tex. Med. Branch at Galveston*, 195 S.W.3d at 100. A claim for affirmative relief "must allege a cause of action, independent of the plaintiff's claim, on which the claimant could recover compensation or [obtain] relief, even if the plaintiff abandons or is unable to establish his cause of action." *Univ. of Tex. Med. Branch at Galveston*, 195 S.W.3d at 101 (citing *BHP Petroleum Co. v. Millard*, 800 S.W.2d 838, 841 (Tex. 1990)). However, "if a defendant does nothing more than resist plaintiff's right to recover, the plaintiff has an absolute right to the nonsuit." *BHP Petroleum Co.*, 800 S.W.2d at 841 (quoting *Gen. Land Office v. Oxy U.S.A., Inc.*, 789 S.W.2d 569, 570 (Tex. 1990)).

Pleadings filed by a party must provide fair notice of the nature of the claims asserted so that the opposing party can prepare a defense. *Bos v. Smith*, 556 S.W.3d 293, 305–06 (Tex. 2018) (citing TEX. R. CIV. P. 47(a)); *Horizon/CMS Healthcare Corp. v. Auld*, 34 S.W.3d 887, 896–97 (Tex. 2000). While "we liberally construe

13

the pleadings in the pleader's favor," we cannot "read into a petition what is plainly not there." *Bos*, 556 S.W.3d at 306 (first citing *Auld*, 34 S.W.3d at 897; then quoting *Heritage Gulf Props., Ltd. v. Sandalwood Apartments, Inc.*, 416 S.W.3d 642, 658 (Tex. App.—Houston [14th Dist.] 2013, no pet.)).  Because a pleading's title does not determine its character, when we consider the nature and effect of a pleading, we will focus on the substance of the relief sought, rather than the formal styling of the pleading.  *In re J.Z.P.*, 484 S.W.3d 924, 925 (Tex. 2016) (citing *Ryland Enter., Inc. v. Weatherspoon*, 355 S.W.3d 664, 666 (Tex. 2011)).

### 2. *Analysis*

In November 2018, Pioneer filed a plea in abatement arguing that, pursuant to Rule 39(a) of the Texas Rules of Civil Procedure, S.C. and Audra's other heirs were necessary and indispensable parties to the underlying suit.  *See* TEX. R. CIV. P. 39(a). Pioneer asserted that the only question before the trial court was whether Appellant or Audra's heirs—including S.C.—owned the disputed mineral interests.  Later, in May 2019, Pioneer filed its "Petition in Intervention for Interpleader," in which it named S.C. (and others) as an interpleader-defendant because he had previously asserted an ownership claim to a portion of the disputed mineral interests.  Shortly thereafter, in June 2019, S.C., who at the time was ostensibly pro se, appeared in the case when he filed an answer.  In August 2019, Appellant filed his notice of nonsuit without prejudice.  Two months later, S.C., through his attorney of record, filed another answer.

Appellant now argues that S.C.'s motion for summary judgment, and the trial court's order which granted it, are both void because Appellant "had taken [a] nonsuit" before S.C. moved for summary judgment.  S.C. responded, *inter alia*, that because he had "properly answered and appeared, cross-claimed, and moved for summary judgment[,]" the trial court correctly considered and ruled on his motion for summary judgment.  While it is true that Appellant nonsuited his claims long

before S.C. moved for summary judgment, Appellant's nonsuit could not have extinguished S.C.'s claim for affirmative relief, if such a claim was raised, so long as S.C. had asserted and pleaded this claim *before* Appellant's notice of nonsuit was filed. *See, e.g., Univ. of Tex. Med. Branch at Galveston*, 195 S.W.3d at 100–01. Under that scenario, S.C.'s motion for summary judgment would have been properly before the trial court. *Id.*

Appellant further argues that S.C. "was not a part of" the "[l]ive pleadings [that] were . . . filed prior to Appellant's nonsuit." We disagree. A reviewing court "look[s] to the substance of a plea for relief to determine the nature of the pleading, not merely at the form of title given to it." *State Bar of Tex. v. Heard*, 603 S.W.2d 829, 833 (Tex. 1980). In this instance, while the term "Answer" may be the title that is assigned to the pleading that S.C.'s attorney filed on S.C.'s behalf in October 2019, it was *in substance* an *amended answer* because in June 2019, more than two months before Appellant filed his notice of nonsuit, S.C., ostensibly pro se, filed a document in the case that he considered to be his original answer.

The trial court's conclusion that the original pro se document filed by S.C. constitutes an answer is consistent with the Texas Supreme Court's holding in *Smith v. Lippmann*, 826 S.W.2d 137 (Tex. 1992). At issue in *Smith* was a letter that the court held "sufficiently answered the respondent's service of citation." 826 S.W.2d at 137. In that case, Smith, the named defendant, mailed a letter to the district clerk acknowledging that he had received the citation issued in the suit. The district clerk received and filed Smith's letter two days later. Although Smith's letter was not drafted in a "typical answer format," it nevertheless provided the trial court with a timely response by Smith to the suit that was filed against him and his acknowledgment and acceptance of Lippmann's citation and petition. *Id.* at 138. Based on its content, the court held that Smith's letter was sufficient to constitute an answer to the suit. *Id.* Likewise, S.C.'s correspondence, although lacking in style

and the routine denials and defenses one typically notes in a formal pleading, identified the cause number assigned to the suit and stated that his letter was "[i]n response to [the] citation [in] cause no[.] 1865" and the "Petition in Intervention for Interpleader [that] Pioneer Natural Resources [had] made." Accordingly, S.C.'s pro se letter was sufficient to constitute his original answer to the claims asserted against him in this case.

While pro se litigants are not exempt from compliance with the applicable laws and procedural rules, pro se pleadings must nonetheless be liberally construed. Therefore, to ensure that a pro se litigant is afforded a fair opportunity to be heard, we review and construe the pleadings of pro se litigants by less stringent standards than we do when considering pleadings that are drafted by lawyers. *See Veigel v. Tex. Boll Weevil Eradication Found., Inc.*, 549 S.W.3d 193, 195 n.1 (Tex. App.—Austin 2018, no pet.); *see also Thomas v. Collins*, 860 S.W.2d 500, 503 (Tex. App.—Houston [1st Dist.] 1993, writ denied). We note that S.C.'s pro se answer references two other documents: (1) Pioneer's citation (with the filed and attached petition in intervention that named S.C. as an interpleader-defendant) in the underlying suit; and (2) S.C.'s filed affidavit of heirship. These references in his answer provide some context[3] to our determination of whether he asserted a claim for affirmative relief in advance of Appellant's nonsuit.

In the pro se answer that he filed in response to Pioneer's petition in intervention, S.C. affirmatively claims that he (and two others named in the pleading) are "*the only living blood relatives inheriting* the mineral rights from said property" (emphasis added). He also attested to the same information in his affidavit

---

[3]Documents "filed" may be incorporated into a pleading by reference. *See* TEX. R. CIV. P. 59 ("or filed and referred to as such"). Regarding Pioneer's interpleader petition and the affidavit of heirship filed by S.C., both had been previously "filed" in Glasscock County and were identifiable. Notwithstanding, we need not address whether the documents referenced in S.C.'s answer were "incorporated by reference" because his pro se answer is sufficient for purposes of our analysis.

of heirship. With respect to the unpaid royalties that Pioneer interpleaded into the registry of the trial court, S.C. set forth a claim to the disputed royalty monies and alleged that he was one of only three persons that were entitled to do so. As such, S.C. asserted his own affirmative claim to a portion of the disputed mineral interests and the unpaid royalties, which Pioneer had "unqualified[ly] tender[ed]" into the registry of the trial court.

S.C.'s asserted claim to the disputed mineral interests is independent of the competing and rival claim raised by Appellant because S.C. could have recovered title to his respective portion of the mineral interest and unpaid royalties, even if Appellant had either abandoned his own claim or failed to establish his entitlement to it. *See Univ. of Tex. Med. Branch at Galveston*, 195 S.W.3d at 101. Far from "do[ing] nothing more than resist[ing] [Appellant's] right to recover," we conclude that S.C., on his behalf, clearly asserted an independent claim for affirmative relief when he answered. *See BHP Petroleum Co.*, 800 S.W.2d at 841 (quoting *Gen. Land Office*, 789 S.W.2d at 570). Therefore, based on the summary judgment evidence before us, we cannot say that the trial court erred either in its construction of S.C.'s pro se answer or its determination that an affirmative claim for relief was alleged by S.C. in his own right.

Because S.C. asserted his entitlement to a portion of the disputed mineral interests and the unpaid royalties that Pioneer unqualifiedly tendered into the registry of the trial court *before* Appellant filed his notice of nonsuit, S.C.'s claim for affirmative relief survived and was not extinguished. As such, S.C.'s motion for summary judgment was properly before the trial court and ripe for determination. Therefore, the trial court did not err when it considered and granted S.C.'s motion. Accordingly, we overrule Appellant's third issue.

### III. *Interpleader Discharge*

Finally, in his eighth issue, Appellant argues that the trial court erred when it signed the parties' agreed order, in which the trial court granted Pioneer's petition in interpleader and discharged Pioneer from the suit, because Pioneer had purportedly "re-entered the case" when one of its employees prepared an affidavit at the request of the Fishers.

### A. *Standard of Review*

We review a trial court's grant of interpleader relief for an abuse of discretion and resolve every reasonable doubt in favor of a stakeholder's right to interplead. *Bryant v. United Shortline Inc. Assurance Servs., N.A.*, 972 S.W.2d 26, 31 (Tex. 1998). The complaining party bears the burden to present a record that demonstrates an abuse of discretion. *Simon v. York Crane & Rigging Co.*, 739 S.W.2d 793, 795 (Tex. 1987).

### B. *The trial court did not abuse its discretion when it signed the parties' agreed order that discharged Pioneer.*

#### 1. *Applicable Law*

An interpleader action under Rule 43 of the Texas Rules of Civil Procedure requires only that rival and conflicting claims exist. *See* TEX. R. CIV. P. 43; *State Farm Life Ins. Co. v. Martinez*, 216 S.W.3d 799, 807 (Tex. 2007). When presented with conflicting claims to the stake it holds, a disinterested and innocent stakeholder who does not know which claimant should be paid and fears potential exposure to double or multiple liability for the single stake, may apply to a trial court for protection. *Nixon v. Malone*, 98 S.W. 380, 385 (Tex. 1906). The stakeholder may do so by placing the fund in the control of the trial court so that it may determine the fund's ownership, thereby relieving the stakeholder from the potential liability to pay the single fund more than once. *See id.*; *see also Martinez*, 216 S.W.3d at 806–07. As such, to be entitled to interpleader relief, the interpleading party must

18

establish that (1) it was faced with rival and competing claims to the interpleaded funds, and (2) a reasonable doubt existed in law or fact as to which claim was valid. *Broesche v. Jacobson*, 218 S.W.3d 267, 277 (Tex. App.—Houston [14th Dist.] 2007, pet. denied).

### 2. *Analysis*

In this case, Pioneer would be entitled to interpleader relief so long as it established that it faced rival and competing claims from Appellant and Appellees to the same property—namely the nonparticipating mineral interests in dispute that previously belonged to W.T. and Chester—and that it had a reasonable doubt as to which claimants were entitled to the property. *See Broesche*, 218 S.W.3d at 277. Any reasonable doubt as to whether Pioneer satisfied these two conditions must be resolved in Pioneer's favor. *See Bryant*, 972 S.W.2d at 31.

The record before us contains a transcript of a hearing that occurred on August 28, 2019. The order by which the trial court discharged Pioneer was signed by the trial court and approved by the parties the same day; it contains a provision, as Appellant concedes on appeal, that all parties to the suit had agreed to Pioneer's discharge and dismissal. Moreover, Appellant does not dispute that Pioneer faced rival and competing claims to the funds, which it unconditionally tendered, that were generated from the disputed mineral interests. Nor does Appellant deny that Pioneer had a reasonable doubt as to whom it owed the disputed royalty payments, Appellant or Appellees. Here, Appellant shouldered the burden to establish that the trial court abused its discretion when it discharged Pioneer; he failed to do so. Therefore, Pioneer was entitled to the interpleader relief it requested.

Despite this, Appellant now advances the argument that the trial court abused its discretion when it discharged Pioneer on August 28, 2019, because *later*, on October 3, 2019, Pioneer allegedly "re-enter[ed] the case" when a business records affidavit prepared at the request of the Fishers, and executed by a representative from

19

Pioneer, was subsequently submitted with the Fishers' motion for summary judgment in support of their claim for money had and received. Although innovative, we decline to adopt the argument offered by Appellant. If Pioneer had or was permitted to reenter the case, the trial court's misstep, if any, would have been to permit *the reentry*, not its *prior* decision to discharge Pioneer in the first place. Here, Pioneer *did not* reenter the case in any respect. Rather, *as an operator*, Pioneer merely executed and furnished, upon the Fishers' request, a business records affidavit that included relevant documents *to a nonoperator* who possessed oil and gas interests which could be potentially affected. When it executed this affidavit, Pioneer did not assert any claims or defenses, nor did it become a party or resurrect its status as a party to the underlying suit.

Appellant further argues that Pioneer violated its duty of "utmost good faith and fair dealing" when it "reenter[ed] the case with the [business records] affidavit [it prepared and executed], knowing that the Appellant could not respond to [the] affidavit's accuracy or to the issues of fact raised." In support of his argument, Appellant cites to *Texas Outfitters Ltd., LLC v. Nicholson*, 572 S.W.3d 647, 653 (Tex. 2019). However, *Nicholson* is inapposite and does not support Appellant's contention because he has failed to establish that such a duty exists or would be applicable in this context or, if it did, that a breach occurred.

Finally, Appellant had the right and opportunity to subpoena documents, depose individuals, and conduct other forms of appropriate discovery. Appellant's nonsuit did not prohibit him from challenging either the veracity or the merits of the Pioneer business records affidavit relied on by the Fishers. In fact, in his notice of nonsuit, Appellant stated that, with respect to the Fishers' pending counterclaims for affirmative relief, he planned to "defend against said counterclaim[s] and file [any] necessary defenses and objections subsequent to this Nonsuit Notice." We are not persuaded by Appellant's assertion that he was somehow hindered by the Pioneer

20

affidavit that the Fishers presented and relied on, particularly when Appellant failed to either move for a continuance or request additional time to pursue the discovery he considered to be necessary to contest the Fishers' summary judgment evidence. *See* TEX. R. CIV. P. 166a(g).

For the reasons stated above, we overrule Appellant's eighth issue.

## IV. *This Court's Ruling*

We affirm the judgment of the trial court.

W. STACY TROTTER

JUSTICE

April 28, 2022

Panel consists of: Bailey, C.J.,
Trotter, J., and Wright, S.C.J.[4]

Williams, J., not participating

---

[4]Jim R. Wright, Senior Chief Justice (Retired), Court of Appeals, 11th District of Texas at Eastland, sitting by assignment.